[No. 344.  Decided November 7, 1891.]

W. L. JONES, *Respondent*, v. T. M. REED, *Auditor of the State of Washington*, A. A. LINDSLEY, *Treasurer of the State of Washington, et al., Appellants.*

SUPERIOR COURTS—JURISDICTION—ENJOINING STATE OFFICERS—SUIT BY TAXPAYER.

Art. 4, § 4 of the constitution, giving the supreme court original jurisdiction in *quo warranto* and *mandamus* as to all state officers, does not include the jurisdiction of superior courts in the issuance of injunctions against state officers.

Courts of equity will not restrain the action of state officers in misappropriating public funds on the petition of a mere citizen and

taxpayer, as the attorney general of the state is the proper party to institute suits involving the disposition of the revenue of the state. (HOYT, J., dissents.)

*Appeal from Superior Court, Pierce County.*

Suit by W. L. Jones, as a citizen and taxpayer of the State of Washington against T. M. Reed, auditor, A. A. Lindsley, treasurer of the State of Washington, George A. Black, S. B. Conover and Andrew H. Smith, claiming to be commissioners, and S. B. Conover, J. H. Bellinger, Eugene Fellows, Andrew H. Smith and Geo. W. Hopp, claiming to be regents of the agricultural college, school of science and experimental station of the State of Washington, to enjoin the misapplication of certain funds appropriated by the legislature for the purpose of establishing and maintaining an agricultural college and school of science for the state. Judgment for plaintiff granting a perpetual injunction, from which judgment defendants appeal.

*Turner, Graves & McKinstry,* for appellants.

Respondent has no interest in the controversy to enable him to prosecute the suit. The allegations of the complaint show that the matter in controversy is one purely of public concern—one in which no citizen is interested differently from every other citizen. It is not alleged that respondent's property is being interfered with in any way, nor that any new, peculiar or onerous tax is sought to be enforced against him. It is not alleged that he has any individual interest in the fund alleged to be illegally appropriated, or that his property rights are being invaded by the appellants in the proceedings sought to be enjoined. The allegations, stripped of all verbiage, are simply that defendants, claiming to be state officers but not really such, are misapplying public funds. A plaintiff showing no other interest than this cannot maintain such a suit. 2 High, Injunctions,

§§ 553, 554; High, Ex. Leg. Rem. § 33; *Mossy v. Harris,*
25 La. Ann. 623; *Chicago v. Building Associaton,* 102 Ill.
379; 40 Am. Rep. 598; *Merriam v. Supervisors,* 72 Cal.
517; *Smith v. Heuston,* 6 Ohio, 101; 25 Am. Dec. 741;
*Putnam v. Valentine,* 5 Ohio, 187; *Henry v. Steele,* 28 Ark.
455; *Craft v. Commissioners,* 5 Kan. 518; *Doolittle v.
Supervisors,* 18 N. Y. 155; *Roosevelt v. Draper,* 23 N. Y.
318; *Phillips v. Payne,* 92 U. S. 130; *Williams v. Suffolk
Ins. Co.,* 13 Pet. 420; *Garcia v. Lee,* 12 Pet. 511; *Kennett
v. Chambers,* 14 How. 38; *Foster v. Neilson,* 2 Pet. 254;
*Luther v. Borden,* 7 How. 1. The doctrine we have been
contending for rests upon general principles, but our legis-
lature has recognized the existence and application of these
general principles, and has provided a remedy in the name
of the state to correct and prevent the misapplication of
the public funds of the state. See Laws 1887–8, p. 8, § 8.

*Crowley & Sullivan, H. J. Snively,* and *Reavis & Whitson,*
for respondent:

By the great preponderance of authority it is settled that
any single taxpayer, or any number of them, may inter-
vene to prevent, by injunction, an unlawful levy, appropri-
ation or expenditure, by which the burden of a taxpayer,
as such, would be unjustly and illegally increased, and that
a special or peculiar interest or injury is not indispensable.
There is no substantial reason why a bill on behalf of an
individual taxpayer should not be entertained to prevent
the misuse or illegal expenditure of public moneys. Every
taxpayer is specially injured by any illegal increase of the
burden of taxation, and has an interest in the faithful ad-
ministration of the affairs of state and in the lawful ex-
penditure of its funds. Mechem, Public Officers, § 996;
*Crampton v. Zabrisk'e,* 101 U. S. 609; *Winn v. Shaw,* 87
Cal. 631; *Barry v. Goad,* 89 Cal. 215; *Hospers v. Wyatt,*
63 Iowa, 264; *The Liberty Bell,* 23 Fed. Rep. 843;

*Smith v. Board of Commissioners,* 45 Fed. Rep. 725; *Commissioners of Clay County v. Markle,* 46 Ind. 96; *Davenport v. Kleinschmidt,* 6 Mont. 502; *Newmeyer v. Missouri R. R. Co.,* 52 Mo. 81; 14 Am. Rep. 394; *Colton v. Hanch tt,* 13 Ill. 616; *Perry v. Kinnear,* 42 Ill. 160; *Drake v. Phillips,* 40 Ill. 389; *Chestnutwood v. Hood,* 68 Ill. 132; *Devine v. Commissioners,* 84 Ill. 590; *Leitch v. Wentworth,* 71 Ill. 147; *Mayor of Baltimore v. Gill,* 31 Md. 375; *Willard v. Comstock,* 58 Wis. 565; 46 Am. Rep. 657; *Place v. Providence,* 12 R. I. 1; *Sinclair v. Commissioners,* 23 Minn. 407; 23 Am. Rep. 694; *Smith v. Magourich,* 44 Ga. 163; *Wheeler v. Philadephia,* 77 Pa. St. 338; *City of Valparaiso v. Gardner,* 97 Ind. 1; 49 Am. Rep. 416; *Merrill v. Plainfield,* 45 N. H. 126; *London v. Wilmington,* 78 N. C. 109; *Winston v. Tennessee, etc., R. R. Co.,* 60 Tenn. 60; *McCord v. Pike,* 121 Ill. 288; 2 Am. St. Rep. 85; *Collins v. Davis,* 57 Iowa, 256.

The opinion of the court was delivered by

DUNBAR, J.—The first proposition urged by appellants is that, under the provisions of the constitution of this state, the superior court has no jurisdiction to entertain proceedings by *mandamus* against state officers to compel their performance of any official act; and, as the writ of injunction is in every respect the correlative of the writ of *mandamus*, it follows that it has no jurisdiction to enjoin state officers in cases of this kind. We do not think this contention can be maintained. All that is decided in *Board of Liquidation v. McComb,* 92 U. S. 531, cited by appellants on the point, is that in certain cases, probably analogous to this, writs of *mandamus* and injunction are somewhat correlative to each other. But the truth of this proposition may be granted without affecting the question of jurisdiction under our constitution. Sec. 4 of art. 4 of the constitution provides that the supreme court shall have original jurisdiction in *habeas corpus* and *quo warranto* and *mandamus* as to all state officers, and appellate jurisdiction

in all actions and proceedings (with a $200 limitation in civil actions for the recovery of money). We know of no cases where a constitutional provision of this kind has been construed to confer exclusive jurisdiction. It is a grant of original jurisdiction, but there is nothing in the language of the grant to convey the idea of exclusiveness, or to exclude the idea of concurrent jurisdiction. In *Delafield v. State of Illinois*, 2 Hill, 159, and a well-considered case, the court says:

"There is nothing in the nature of jurisdiction, as applied to courts, which renders it exclusive. It is not like a grant of property, which cannot have several owners at the same time. It is matter of common experience that two or more courts may have concurrent powers over the same parties and the same subject-matter. Jurisdiction is not a right or a privilege belonging to the judge; but an authority or power to do justice in a given case when it is brought before him. There is, I think, no instance in the whole history of the law where the mere grant of jurisdiction to a particular court, without any words of exclusion, has been held to oust any other court of the powers which it before possessed."

In *Courtwright v. Mining Co.*, 30 Cal. 573, it is held that the grant of original jurisdiction to a particular court of a class of cases, without any words excluding other courts from exercising jurisdiction in the same cases, does not necessarily deprive other courts of concurrent jurisdiction in such cases. To the same effect is *Ames v. Kansas*, 111 U. S. 449 (4 Sup. Ct. Rep. 437); *United States v. Louisiana*, 123 U. S. 32 (8 Sup. Ct. Rep. 17); *Bors v. Preston*, 111 U. S. 252 (4 Sup. Ct. Rep. 407). In fact we think the universal current of decisions is that way, and that no cases can be found holding otherwise, excepting in a few instances where, under constitutional provisions giving original jurisdiction, congress has by law made the jurisdiction of the federal courts exclusive; but they were cases which were

peculiar to, and sprang out of, the very existence of the federal government, and the doctrine of exclusiveness in those cases is discussed from altogether a different standpoint and involves altogether a different principle. But we do not base our judgment in this case entirely on authority, so far as the construction of § 4 is concerned; for the same fundamental law that grants the original jurisdiction to the supreme court is not silent as to the original jurisdiction of the superior court; and § 4 must not be construed as an independent section, but must be construed in connection with § 6, which, among other things, provides that the superior court shall also have original jurisdiction in all cases and all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court. Had the language of the constitution been that the supreme court shall have "exclusive" original jurisdiction, etc., employing a word not uncommon in conferring jurisdiction on courts, there would not be much room for construction; but as the framers of the constitution did not see fit to use such a word, or any other word tending to confer exclusive jurisdiction, there is still, it seems to us, about as little room for construction. The language employed is in perfect harmony with the idea of concurrent jurisdiction, and the idea of concurrent jurisdiction is not an uncommon one in the history of our courts. It therefore seems reasonable that the framers of the constitution did not intend to vest exclusive jurisdiction in the supreme court, and it follows that, under the provisions of § 6, the superior court has original jurisdiction.

The second contention of the appellants is, that the respondent has no interest in the controversy to enable him to prosecute this suit. The allegation is, that he is a citizen and taxpayer of the State of Washington. On this proposition there is a perplexing conflict of authority, both as regards the cases reported and the opinions of eminent

authors. Some authors assert, and some courts hold, that in no case can a private individual, in the absence of statutory authority, maintain a bill to enjoin a breach of public trust without showing that he will be specially injured thereby; and that it must appear that his injury will be separate and distinct from the injury that he may suffer in common with the community at large, otherwise the remedy must be sought through those representing the public; while other authors and courts hold that municipal corporations and their officers may be restrained from transcending their lawful powers, or violating their lawful duties, in any manner which will injuriously affect the taxpayer, on the complaint of an inhabitant who shows no other interest than that he is a taxpayer. The cases holding against the intervention of the taxpayer found their judgment on the theory that the misappropriation of public funds by the officers of a corporation is in the nature of a public nuisance which cannot be abated at the suit of a private citizen, and that, unless some special private injury is shown, the relief must be obtained through the intervention of officers appointed to protect public interests. We will not attempt to collate the authorities *pro* and *con* on this proposition, but are inclined to the opinion that the right of a resident taxpayer to invoke the interposition of a court of equity to compel the officers of a municipal corporation to do their duty, or to restrain them from illegally increasing the burden of taxation by squandering the public funds of the corporation, has received the great weight of at least modern authority. The supreme court of the United States has spoken on this subject in *Crampton v. Zabriskie*, 101 U. S. 601. The doctrine was thus laid down by Justice FIELD:

"Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county or the illegal creation of

a debt which they in common with other property holders of the county may otherwise be compelled to pay, there is at this day no serious question."

It will be observed, however, that this case falls short of asserting the doctrine claimed here by the respondent, that courts of equity will restrain the action of state officers in matters of public concern on the petition of a taxpayer who shows no special interest; nor will the language or argument of the court bear any such construction. On the other hand, it is based on the relationship of the taxpayer to the municipal, or *quasi* municipal, corporation. Indeed, of all the cases cited by the respondent, not one case goes beyond the doctrine laid down in *Crampton v. Zabriskie*, so that it will not be necessary to review them here. Nor have we been able to find a case which extends the doctrine beyond that case. In all the cases reported the restraining order has been asked against county, town, city or district officers. It is argued by respondent that, notwithstanding the absence of authority, there is no difference in principle between restraining county officers and state officers in matters of public concern on the prayer of a taxpayer. The principle upon which the doctrine in regard to municipal, or *quasi* municipal, corporations is based, flows from its analogy to a well-settled doctrine in equity governing private corporations, where each stockholder has an interest in the property of the corporation, and may interfere to protect the corporate funds from the illegal or fraudulent acts of its officers. Dill. Mun. Corp. (4th ed.) § 915.

But this reasoning cannot apply to a state government. The county is a *quasi* corporation; the state is a sovereignty. The county only possesses such powers as the legislature of the state confers upon it. Its revenue, its property, its very existence, depend upon statutory enactment. It can be enlarged, dismembered or annihilated at

the will of the state. The state, on the contrary, has all the powers not relinquished to the general government by the articles of federation, and, subject to these relinquishments, its sovereignty is supreme. One of the necessary attributes of sovereignty is the protection of the sovereign power and the maintenance of the state organization.

As the fallacy of a proposition can best be shown by distorting it, we may presume that if one of the departments of the state government can be suspended at the instance of a private citizen, who has nothing more than a community interest in a matter which concerns the general public, that every department of the state can be suspended at the same time, and the whole machinery of the government stopped, and the very existence of the state, so far as the exercise of its functions are concerned, destroyed. Surely such a theory of practice is not in harmony with the genius of our government, nor will authority sanction, or public policy permit, the adoption of a rule which will authorize any number of volunteers who may, rightfully or wrongfully, interpret the laws different from the interpretation put upon them by the officers of the state, to paralyze for a time every or any branch of the state government. It seems to us that there is a difference in principle, and there might be a very great difference in results; and probable results are what the policy of the law is based upon. To prevent just such results, and to protect the interests of the public, the statute has provided for the election by the taxpayers of an officer—the attorney general—who is especially clothed with authority to institute proceedings of this kind. In the act creating the office of attorney general, and defining his duties, in the Laws of 1887–88, p. 8, § 6, it is provided, among other things, that it is his duty "to enforce the proper application of funds appropriated to the public institutions of the territory;" nor do we understand that any of the provisions of that chapter have

been repealed by subsequent enactments of the state. The constitution provides that all laws in force at the time of its adoption shall remain in force until their repeal; and there is nothing in the provisions of the act entitled "An act in relation to attorneys" (Laws 1891, p. 95), which repeals any of the provisions of the act of 1887–88. It might as well be held that all the territorial acts in relation to prosecuting attorneys have been repealed by the same act. The law, then, having provided an officer for an especial duty, it is the better policy to submit such litigation to his guidance.

Showing the distinction in the minds of the courts between interfering with the collection and disposition of the revenue of counties and towns and cities, and the disposition of the revenue of a state, we quote from the language of the United States supreme court in *State Railroad Tax Cases*, 92 U. S. 575:

"These reasons, and the weight of authority by which they are supported, must always incline the court to require a clear case for equitable relief before it will sustain an injunction against the collection of a tax which is part of the revenue of a state. Whether the same rigid rule should be applied to taxes levied by counties, towns and cities, we need not here inquire; but there is both reason and authority for holding that the control of the courts, in the exercise of power over private property by these corporations, is more necessary, and is unaccompanied by many of the evils that belong to it when affecting the revenue of the state."

This court, untrammeled by precedent or authority in laying down a policy for this state, deems it safer to relegate the instituting of suits involving the disposition of the revenue of the state, where no private interests are involved, to the judgment and discretion of the attorney general. With this view of the case, it is not necessary to examine other alleged errors. The demurrer should have been sustained.

The judgment is therefore reversed, and, as the demurrer goes to the life of the complaint, the case is dismissed.

ANDERS, C. J., and SCOTT and STILES, JJ., concur.

HOYT, J. (*dissenting*).—I am unable to agree with the conclusions of the majority of the court in this case. If it is conceded that a taxpayer of a county, simply as such, has a right to appeal to the courts to prevent such action by county officials as will lead to the illegal disposition of the property or funds of the county (and such I understand to be the position of the majority of the court), I can see no reason why a taxpayer of a state, as such, cannot invoke the aid of the courts to prevent like illegal action on the part of state officers. It is true he is one degree further removed from the threatened injury, but I cannot see that such fact can affect the principle involved. The taxpayer of the county may apply for relief, not because he is to be affected by the proposed illegal action in a different manner from every other taxpayer in the county, but simply because, as such taxpayer, he is so interested in the property or funds of the county that he may ask the court to protect the same from illegal disposition. The taxpayer of the state bears exactly the same relation, excepting in degree, to the property or funds of the state as does the taxpayer of the county to its funds or property; and to hold that in one case the courts are open to the taxpayer, and in the other not, seems to me inconsistent and contrary to the course of courts in dealing with matters of this kind. It is the pecuniary interest of the taxpayer that gives him the right to appeal to the courts, and not the grade or character of the officer whose illegal action he seeks to prevent. The amount of such pecuniary interest has never been held material, for the complaint, if sustained at all, has always been so sustained regardless of the amount of taxes which that particular taxpayer might be called upon to pay. It

has never been held necessary to allege that complainant was a large taxpayer. Hence it cannot be said that the pecuniary interest of the taxpayer of the state is, by reason of his remoteness, too small to qualify him as a complainant. Besides, if the amount of the injury was to be taken into account, it might well happen that the individual interest of a particular taxpayer might be more largely affected by the action of the officers of the state than by almost any act that could be done by the officers of a county.

But it is said that the state is sovereign, and that from this fact a distinction can be drawn. It is true the state is sovereign, but what is it that makes up such sovereignty? The people of the state. And I cannot concede that there is an artificial something that is over and above the whole people of the state as such. Every citizen, as a constituent part of such sovereignty, is equally interested that the agents thereof do their duty; and were it not for the fact that, as a general rule, courts only deal with pecuniary rights, I see no reason why any citizen could not put in motion the judicial department of the state to prevent illegal action on the part of its officers. But, as such is the fact, only a taxpayer can make such appeal; and, if he can thus appeal as a taxpayer of a county, I see nothing growing out of his relation to the state to prevent a like appeal to protect his interests as a taxpayer thereof. The majority of the court seem to have realized the force of considerations like these, and, to meet them, have suggested all sorts of probable or possible evils which might result if the individual taxpayer of the state was allowed thus to interfere with the proposed action of its officers. There would be much force in the suggestions of the majority in this regard were it within the power of such taxpayer, of his own motion, to so interrupt the business of the state, for then an evil-disposed person might causelessly so interfere; but when it is remembered that all such taxpayer can do is

to go into a court of competent jurisdiction and state the facts upon which he relies for relief, and take the judgment of such court thereon, before anything can be done to affect the action of the state, the danger is more fanciful than real. If courts can be trusted to interfere with the action of county officers in a proper case, I see no danger in their being likewise trusted in regard to the officers of the state. If it is necessary that the funds and property of the county should be guarded, not only by the prosecuting attorney thereof, but also by every taxpayer therein, the same reasons will require that the property and funds of the state should be likewise guarded, not only by the attorney general, but also by every taxpayer; and this is especially so, as the duty of the prosecuting attorney to protect the property and interests of the county is more clearly defined than is that of the attorney general to protect those of the state. If the contention of the majority is true, the taxpayers of the state are absolutely powerless, and must sit quietly by and see the officers of the state do things which are clearly illegal, and which may result in incalculable losses to the state. The attorney general may be incompetent or corrupt, and may therefore refuse to institute proceedings to prevent actions however illegal, and the funds and property of the state be placed at the mercy of state officers, who, by corruption or incompetency, may produce or allow such a disposition of the property or funds of the state, during their term of office, and before they could be reached by the slow process of impeachment, as would practically ruin the state. To hold that such a thing is possible under our form of government, where the courts in all matters are made the final arbiters to decide as to the legality or illegality of almost every kind of action, simply because it is possible that such courts might improperly prevent certain proposed actions on the part of such officers, seems to me entirely untenable. The county can be

fully protected against any illegal combination or conspiracy by which its funds or property are to be squandered, or applied to illegal uses, while the state, under the same circumstances, is held to be powerless.

I am of the opinion that every taxpayer of a city or county has a right to ask the courts to interfere between the taxpayers thereof and any proposed illegal action of its officers by which an illegal disposition of the funds or property of the city or county is threatened; and that in like manner any taxpayer of the state may ask the courts to interfere in a like case to prevent any illegal action by which the property or funds of the state are likewise threatened. If in either case the taxpayer appeals to the courts when no reason for such appeal exists, it will be presumed that he will be dismissed therefrom and mulcted in costs. This presumption and power of the courts to protect themselves will lead the taxpayer to ask their interposition with caution and only when, in his opinion, an urgent necessity exists. Courts, of course, will proceed with great care in these as in all other matters of such supreme importance, and will only put in force their machinery to prevent the county or state authorities from acting when the threatened action is clearly illegal and will result in great loss to the taxpayers of the county or state; and to hold that because the courts might possibly be wrong in any case, and improperly tie the hands of the county or state officials, they must not move at all, would apply with like force to every important question which the courts might be called upon to decide. If the prosecuting attorney or attorney general set on foot the proceedings, it is still the courts which must decide as to their propriety, the same as they would if the proceedings were instituted by a taxpayer; so that the effect upon the state or county officials would be the same in one case as in the other, and the only difference would be that the courts might be more often

appealed to if the rule herein contended for were adopted; but, as we have suggested, courts always have abundant power to protect themselves.  In my opinion, the relator in this case was a competent party to institute and maintain the action, and the decision of the court below should be affirmed.