[No. 2741. Decided July 22, 1898.]

DOUGLAS YOUNG, *Respondent*, v. THE STATE OF WASHINGTON, *Appellant.*

CONTRACTS BY GOVERNOR — LIABILITY OF STATE — RATIFICATION.

There being no constitutional or statutory provision, which, either expressly or by necessary implication, authorizes the governor to employ expert assistance for the purpose of investigating the books and accounts of the state penitentiary, the state is not bound by his contract employing an expert accountant for such purpose.

The fact that the legislature, subsequent to the making of an unauthorized contract by the governor, appropriates a smaller sum than the amount claimed, in payment of the services rendered under the contract, cannot be deemed a ratification, but amounts to no more than an adjustment and settlement of the claim by the legislature, thus withdrawing from the courts any jurisdiction to adjudicate upon the right to recover or the amount of recovery.

Appeal from Superior Court, Thurston County.—Hon. CHARLES H. AYER, Judge. Reversed.

*P. H. Winston,* Attorney General, and *T. M. Vance,* for the State.

*T. N. Allen, Thomas B. Hardin,* and *Pierre P. Ferry,* for respondent.

The opinion of the court was delivered by

ANDERS, J.—The complaint in this action alleges that on the 18th day of December, 1894, the state of Washington, through and by its governor, employed the plaintiff to examine, expert and report to said governor, upon the books and accounts, vouchers, and the condition of affairs generally, with reference to the financial management of the state penitentiary at Walla Walla, during the term of warden Coblentz, and agreed to pay the plaintiff for his services in that behalf the reasonable worth and value thereof; that the plaintiff accepted said employment, and did well and faithfully examine, expert and report to said governor upon said books, accounts and vouchers, and condition of affairs generally, as to the financial management of said penitentiary, and in every respect faithfully discharged the duties of said employment and completed the same on the 13th day of February, 1895; that the reasonable value of said services so rendered by the plaintiff is the sum of $860, of which sum the defendant has paid to this plaintiff the sum of $430, and defendant has wholly failed and refused to pay to the plaintiff any other or greater sum whatsoever; that there remains due and unpaid from defendant to the plaintiff the sum of $430, with interest thereon from the 13th day of February, 1895, at the legal rate of eight per cent. per annum. The defendant interposed a demurrer to this complaint on the grounds (1) that the court had no jurisdiction of the action,

and (2) that the facts alleged in the complaint did not
constitute a cause of action. This demurrer was overruled,
and the defendant answered by denying the material alle-
gations of the complaint and averring affirmatively that
whatever services were rendered by the plaintiff did not
exceed in value the sum of $430, which sum has been
wholly paid to the plaintiff. A jury was waived and a trial
had by the court; and the court found the facts substan-
tially as alleged in the complaint, and thereupon gave judg-
ment in favor of the plaintiff for the sum demanded, to-
gether with interest thereon from March 1, 1895. It is
conceded by the learned counsel for the state that, if the
*state* employed the respondent to perform the services
which he actually rendered, the judgment of the court
below should be affirmed; but he contends that no con-
tract was entered into between the state and the respondent,
for the reason that the governor did not possess the power
to make such an agreement as is alleged in the complaint
herein. The only question, therefore, to be determined,
is whether or not the governor had legal authority to ex-
ecute the contract on behalf of the state; and in deter-
mining this question it is necessary to ascertain the law
upon the subject, for it is well settled that public officers
have, and can exercise, only such power as is conferred
upon them by law, either statutory or constitutional, and
that the government is not bound by the unauthorized
acts of its officers or agents. *Gibbons v. United States,*
8 Wall. 269; *Whiteside v. United States,* 93 U. S. 247;
*Langford v. United States,* 101 U. S. 341; *Orton v. State,*
12 Wis. 509; *State ex rel. Coffin v. Horton,* 21 Nev. 466
(34 Pac. 316); *Randall v. State,* 16 Wis. 340; *Lewis v.
Colgan,* 115 Cal. 529 (44 Pac. 1081); *People v. Tal-
mage,* 6 Cal. 256; *Stanton v. State,* 5 S. D. 515 (59 N. W.
738).

Our state constitution provides that the governor may require information in writing from the officers of the state upon any subject relating to the duties of their respective offices, and shall see that the laws are faithfully executed. Constitution, art. 3, § 5. And, in addition to the powers conferred upon the governor by the constitution, he is empowered by statute to supervise the conduct of all executive and ministerial officers, and to see that the duties of officers are performed, or, in default thereof, apply such remedy as the law allows. 1 Hill's Code, § 61 (Bal. Code, § 100). It is also made his duty to visit the state penitentiary at least once each year, and as much oftener as he may deem necessary, and provision is made for the payment of the necessary traveling expenses incurred by reason of such visits. 1 Hill's Code, § 1184 (Bal. Code, § 2777). But we nowhere find, either in the constitution or the statutes, any provision which, either expressly or by necessary implication, authorizes the governor to employ expert assistance for the purpose of investigating the books and accounts of the state penitentiary, or of any other state institution. We are, therefore, constrained to hold that the governor had not the power to bind the state by the contract in question. Nor can the act of the legislature appropriating $430 for the payment of the claim of the respondent be deemed a ratification of the contract made by the governor. On the contrary, we think the legislature by its act not only repudiated such contract, but took upon itself the adjustment and settlement of the respondent's claim; and, having done so, the matter is ended, in so far as the state is concerned.

The question here under consideration was considered by the supreme court of Indiana in the case of *Julian v. State*, 122 Ind. 77 (23 N. E. 690). In that case the plaintiffs were employed by the attorney general of Indiana for

and on behalf of the state, with the approbation of the governor, secretary, auditor and state treasurer, to assist the attorney general in the examination of the title of the state to certain tracts of valuable land, and in the prosecution of suits to recover and quiet the title in the state to the same; and it was agreed that the compensation of plaintiffs should not be more than ten per cent. of the value of said land, or of the proceeds thereof when sold. The legislature of the state afterwards, in an act settling some of the suits in which the plaintiffs were engaged, provided that a certain percentage of the valuation of the property involved should be allowed to the plaintiffs as their compensation. Suits were afterwards brought by the attorneys to recover the full sum to which they claimed they were entitled under the contract with the attorney general, and the court held that there was no power in the attorney general or the governor to enter into the contract, and that the legislature by the act mentioned assumed the adjustment and settlement of the claim, and for that reason the court had no jurisdiction whatever over the same. And in discussing the question the court said:

"There was no legal liability on the part of the state to the appellant, and he had no right of action, which he could maintain, against the state prior to the passage of the act making the allowance. By recognizing the services rendered, and making an allowance in payment, the legislature took upon itself the adjustment of the claim and gave to the claimant no rights except to accept the amount allowed. The claimant must accept the provisions made for him as a whole; he cannot treat the act as a recognition of the liability of the state to pay, and refuse to accept the amount allowed. By the legislature passing an act adjusting the claim, it took the whole jurisdiction of the matter, and withdrew from the courts any jurisdiction to adjudicate upon the right to recover, or the amount to be recovered. The law authorizing the state to be sued only authorizes suits to be brought in cases where there is a

liability on the part of the state to the claimant, which has not been adjusted by the legislature; but does not authorize suits where there only exists a moral obligation to pay, .as may exist in cases of the appellants. In such cases payment is discretionary with the legislature, and its action is final; if it makes an allowance, the claimant may ac-·cept it or not, as he sees fit, and with this his rights end. He cannot maintain an action against the state for the payment."

The ruling in this case was approved in *Julian v. State*, 140 Ind. 581 (39 N. E. 923), and constitutes a complete .answer to the argument of the learned counsel for the re-·spondent as to the moral obligation on the part of the state to pay in this instance.

The judgment is reversed and the cause remanded, with instructions to sustain the demurrer to the complaint.

SCOTT, C. J., and GORDON, REAVIS and DUNBAR, JJ., ·concur.