[No. 20932.   En Banc.   February 15, 1928.]

THE STATE OF WASHINGTON, on the Relation of Roland
H. Hartley, Governor, Plaintiff, v. C. W. CLAUSEN
et al., Respondents.[1]

[1] STATES (42)—ACTIONS—PARTIES—TAXPAYER'S RIGHT TO ENJOIN
STATE OFFICERS.  In this state, a citizen and tax payer has no
legal capacity to maintain an action to restrain the misap-
plication of public funds of the state, the duty devolving under
our statutes upon the Attorney General.

[2] SAME (12, 38)—POWERS OF GOVERNOR—RIGHT OF ACTION AGAINST
STATE OFFICERS.  Where the Attorney General, on request by
the governor, refuses to do so, the governor may institute an
action to restrain the misappropriation of state money; in view
of Const., Art. 3, § 2, making the governor the supreme ex-
ecutive officer of the state, and Art. 3, § 5, requiring him to
see that the laws are faithfully executed.

Appeal from a judgment of the superior court for
Thurston county, Wright, J., entered September 23,
1927, dismissing an action for an injunction, upon sus-
taining a demurrer to the complaint.  Reversed.

E. H. Guie and Coleman & Fogarty, for relator.
The Attorney General, for respondents.

FRENCH, J. — The relator instituted this action
against C. W. Clausen and W. G. Potts, as members of
the state highway committee, and in their respective
capacities as state auditor and state treasurer, for the
purpose of restraining them from employing and pay-
ing the respondent Beeman as a secretary and con-
sulting engineer to the state highway committee.  A
demurrer was interposed to this complaint on the
ground that the relator had no legal capacity to sue,
and that the complaint did not state facts sufficient to

[1]Reported in 264 Pac. 403.

constitute a cause of action. The demurrer being sustained by the lower court, and the relator having elected to stand upon his complaint, a judgment of dismissal was entered, from which this appeal is taken.

[1] It is the contention of respondents that the only person authorized to institute an action to restrain the unlawful expenditure of state funds is the *Attorney General.* Our first case touching on this subject is *Jones v. Reed,* 3 Wash. 57, 27 Pac. 1067, a suit by Jones, a citizen and taxpayer of the state of Washington, against the state auditor, and other state officers to enjoin the misapplication of certain funds appropriated by the legislature. The rule laid down there is:

"This court, untrammeled by precedent or authority in laying down a policy for this state, deems it safer to relegate the instituting of suits involving the disposition of the revenue of the state, where no private interests are involved, to the judgment and discretion of the *Attorney General.*"

Again, in the case of *State ex rel. Pierce County v. Superior Court,* 86 Wash. 685, 151 Pac. 108, where an action was commenced by a taxpayer against certain state officials for the purpose of declaring void a certain contract entered into relative to the expenditure of certain state funds, this court said:

"Again, it is a settled principle in this state that a taxpayer as such can not maintain an action against the state or any of its officers to prevent the misappropriation of public moneys, but that this power rests alone with the *Attorney General.* This we first held in the early case of *Jones v. Reed,* 3 Wash. 57, 27 Pac. 1067, and have reaffirmed in the cases of *Birmingham v. Cheetham,* 19 Wash. 657, 54 Pac. 37; *Tacoma v. Bridges,* 25 Wash. 221, 65 Pac. 186; and *Bilger v. State,* 63 Wash. 457, 116 Pac. 19."

Our last expression of opinion on this subject appears in *State ex rel. Dunbar v. State Board of Equal-*

*ization,* 140 Wash. 433, 249 Pac. 996, where this court said:

"The next objection presented to the action is that the *Attorney General* is not a proper party to institute and maintain it. In *Jones v. Reed,* 3 Wash. 57, 27 Pac. 1067, it was held that the *Attorney General* was the proper party to enjoin the misapplication of funds appropriated by the legislature for the purpose of establishing an agricultural school, and that that officer was the only one who could maintain such action. In *State ex rel. Attorney General v. Seattle Gas & Electric Co.,* 28 Wash. 488, 68 Pac. 946, 70 Pac. 114, it was held that the *Attorney General* was not a proper party to maintain a *quo warranto* proceeding to inquire into the wrongful exercise of a franchise granted by a municipality. It was there held that the *Attorney General* did not have common law powers and had no authority to institute an action concerning merely a local question which did not affect generally the citizens of the state, and it was also pointed out that the prosecuting attorneys of the several counties were given the power expressly to institute such proceedings. In *Jones v. Reed, supra,* and *State ex rel. Pierce County v. Superior Court,* 86 Wash. 685, 151 Pac. 108, this court held that the *Attorney General* is the only party who under the law can maintain an action to prevent public funds being improperly used. It would seem that, if the *Attorney General* is the only proper party to prevent the misappropriation of public funds, he should be a proper party to compel their proper use. If this is not so there would be no one empowered to institute an action to compel state officials to use appropriated funds in the manner directed by the legislature.

"Under Rem. Comp. Stat., § 112 [P. C. § 6579], it is made the duty of the *Attorney General* to institute and prosecute actions which may be necessary in the execution of the duties of any state officer, and it having been made the duty of the respondents by chapter 82 of the Laws of 1925, p. 95, to levy certain taxes, it would seem to follow that it was the duty of the *At-*

*torney General* to institute and prosecute such action as may be necessary to see that those duties were properly performed. Furthermore, Rem. Comp. Stat., § 11032 [P. C. § 1937], makes it the duty of the *Attorney General* to enforce the proper application of funds, appropriated to the public institutions of the state. The educational institutions are public institutions of the state, and although the funds here may not strictly be said to have been appropriated, yet that word as used in this section should not be given that narrow and restricted meaning, but the intent of the act should be observed, which is that the *Attorney General* should see to the enforcement of an act which was intended to provide funds for the carrying on of state institutions."

In suits to restrain the misapplication of public funds, the rule prevails in many states that such an action can be maintained by a citizen and taxpayer, but this state has adhered steadfastly to the rule that such individuals have no legal capacity to sue, unless private rights are involved.

[2] We now come to the more serious question as to the rights and duties of the governor of the state under our constitutional provisions.

Section 1, Article III of our constitution provides:

"The executive department shall consist of a governor, lieutenant-governor, secretary of state, treasurer, auditor, attorney general, superintendent of public instruction, and a commissioner of public lands, who shall be severally chosen by the qualified electors of the state at the same time and place of voting for the members of the legislature."

Section 5, Article III of our constitution provides:

"The governor may require information in writing from the officers of the state upon any subject relating to the duties of their respective offices, and shall see that the laws are faithfully executed."

Section 2 of Article III of our constitution provides:

"The supreme executive power of this state shall be vested in a governor, . . ."

Under the provisions of our constitution it will be noticed that the executive department consists, among others, of the *Attorney General*. While in many of the constitutions of the various states the governor is but a part of the executive department, in the state of Washington, as is indicated by the above quoted portions of our constitution, the governor is the supreme executive power. Black's Law Dictionary (7th ed.), defines supreme power as: "The highest authority in the state, all other powers in it being inferior thereto." Which, of course, when applied to the instant case, means that the governor, under our constitution, is the *highest executive authority*.

The duties of the *Attorney General* under our constitution as set forth in § 21, Article III, are:

"The Attorney General shall be the legal advisor of the state officers."

Under our form of government, it is the right and duty of the judicial department to interpret the law and declare its true meaning and intent. Equally, it is the right and duty of the executive department to see that the laws as thus interpreted are properly enforced. As the final right to determine the true intent and purpose of all laws is lodged in the supreme court of this state, so is the final determination as to their enforcement and execution lodged in the governor. The complaint in this action alleges that a request was made by the governor of the *Attorney General* that an action be commenced to determine the legality of the action of the Board, and of the expenditures of money, and this we hold to be the orderly method of procedure. But it would be an anomalous situation if the governor,

having the supreme executive power of the state, was unable to secure such a determination because of the failure or refusal to act on the part of one having less power. Some of the expressions referred to, in our cases above cited, are broad enough to indicate that the *Attorney General* only may maintain an action such as this, and as applied to the facts in the particular cases, the statements therein contained are correct. But it must be remembered that, in none of those cases, was the governor a party, nor were we in any of them called upon to construe the above quoted provisions of our constitution concerning the powers, rights and duties of the governor.

Our constitutional provisions above quoted confer upon the governor as great powers as are granted by the constitutions of any of the other states in the Union. In a large number of the states no such power is granted.

We hold that, under our constitutional provisions and in accordance with the cases above cited, the *Attorney General* may act in any matter such as this upon his own initiative or at the request of the governor, but upon his failure or refusal to act, the governor, because of the provisions of section 2, article III of our constitution, granting him the supreme executive power of the state, is entitled to maintain an action such as this.

The allegations of the complaint are very broad and as against demurrer, where not only the statements themselves but all fair inferences to be drawn therefrom are resolved in favor of the validity of the complaint, are, we think, sufficient to state a cause of action. Indeed, the briefs and arguments in this case concern themselves almost entirely with the question of the legal right of the governor to maintain the action.

The cause is reversed, with instructions to overrule the demurrer.

All concur.