[No. 84483-6.   En Banc.]
Argued November 18, 2010.   Decided September 1, 2011.

THE CITY OF SEATTLE, *Petitioner*, v. ROBERT M. MCKENNA, *as Attorney General, Respondent.*

552

*Peter S. Holmes, City Attorney*, and *Laura B. Wishik, Assistant*, for petitioner.

*Maureen A. Hart, Solicitor General*, and *Jeffrey T. Even, Deputy Solicitor General*, for respondent.

*Adam J. Berger* on behalf of Christine O. Gregoire, as Governor, amicus curiae.

¶1 OWENS, J. — The attorney general of Washington made the State a plaintiff in a multistate lawsuit in federal court challenging the constitutionality of the health care reform legislation recently passed by Congress.[1] The city of Seattle seeks a writ of mandamus directing the attorney general to withdraw the State of Washington from the litigation. Resolution of this case requires that we determine the scope of the powers of the attorney general under the Washington Constitution and our statutes. We need not and do not express any opinion on the constitutionality or wisdom of the health care reform legislation, nor do we express any view on the wisdom of the attorney general's decision to make the State a party to litigation challenging the constitutionality of the legislation. We instead confine ourselves to the limited question of whether a writ of mandamus is available.

¶2 We hold that a writ of mandamus is not available because the attorney general has no clear duty to withdraw the State of Washington from the federal litigation. Statu-

---

[1] The relevant legislation is the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010), *amended by* Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029.

tory authority vests the attorney general with the discretionary authority to participate in the litigation at issue. We also determine, however, that this result is not constitutionally compelled; the Washington Constitution does not vest the attorney general with any common law authority. It is for the people of the state of Washington, through their elected representatives or through the initiative process, to define the role of the attorney general. The power of the attorney general is "created and limited, not by the common law, but by the law enacted by the people, either in their constitutional declarations or through legislative declarations in pursuance of constitutional provisions." *State ex rel. Attorney Gen. v. Seattle Gas & Elec. Co.*, 28 Wash. 488, 500, 68 P. 946, 70 P. 114 (1902).

## FACTS

¶3  Few facts are relevant to our disposition of the case. On March 23, 2010, President Barack Obama signed the Patient Protection and Affordable Care Act (PPACA), Pub. L. No. 111-148, 124 Stat. 11 (2010), *amended by* Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029, into law. That same day, the attorneys general of 13 states, including Washington, filed a complaint in the United States District Court for the Northern District of Florida challenging the constitutionality of the PPACA and seeking to enjoin its enforcement. Included in the complaint as a plaintiff is "STATE OF WASHINGTON, by and through ROBERT M. McKENNA, ATTORNEY GENERAL OF THE STATE OF WASHINGTON." Agreed Statement of Facts, Attach. 1, at 2. On April 10, 2010, the city of Seattle filed a petition requesting that this court issue a writ of mandamus to compel Attorney General McKenna to withdraw the State of Washington from the litigation. On May 7, 2010, Governor Christine Gregoire wrote to Attorney General McKenna, indicating her objection to the federal litigation and requesting that he amend the designation of the party to " 'Robert M. McKenna, Attorney General of

The State of Washington.' " *Id.* Attach. 5. Attorney General McKenna replied, declining to amend the caption and instead suggesting that Governor Gregoire intervene on the opposite side of the case as " 'STATE OF WASHINGTON, by and through CHRISTINE O. GREGOIRE, GOVERNOR OF THE STATE OF WASHINGTON.' " *Id.* Attach. 6.

¶4 In May 2010, the plaintiffs in the federal litigation amended their complaint, adding eight additional states, a nonprofit corporation, and two individuals. The caption still included the State of Washington, by and through Robert M. McKenna, Attorney General of the State of Washington. Since that time, a number of developments have taken place in the federal litigation, none relevant to the city of Seattle's petition for a writ of mandamus. The federal litigation is ongoing and the State of Washington remains a party.

## ANALYSIS

### A. Standing

¶5 The city of Seattle asserts that it has standing based on its status as a taxpayer and as a representative of its residents. We assume, without deciding, that the city of Seattle has standing to pursue the present action.

### B. Mandamus

¶6 The city of Seattle seeks a writ of mandamus. Under our state constitution, this court has "original jurisdiction in . . . mandamus as to all state officers." WASH. CONST. art. IV, § 4. Mandamus is available only to compel an official to do a nondiscretionary (i.e., "ministerial") act. *Seattle Times Co. v. Serko*, 170 Wn.2d 581, 589, 243 P.3d 919 (2010). The nondiscretionary act may be to undo an action unlawfully done. *State ex rel. Burlington N., Inc. v. Wash. Utils. & Transp. Comm'n*, 93 Wn.2d 398, 410-11, 609 P.2d 1375 (1980) (issuing writ of mandate compelling repayment

of funds previously transferred in excess of State's authority). Where the attorney general possesses authority to initiate litigation, that authority is generally discretionary. *Boe v. Gorton*, 88 Wn.2d 773, 775-76, 567 P.2d 197 (1977); *Berge v. Gorton*, 88 Wn.2d 756, 761-62, 567 P.2d 187 (1977). In short, if the attorney general had authority to initiate this type of litigation, based on either the Washington Constitution or statute, mandamus is unavailable. We turn, then, to the authority of the attorney general under our system of government.

*C. Authority of the Washington State Attorney General*

1. Constitutional Authority

¶7 Attorney General McKenna contends that the Washington Constitution vests him with authority to initiate litigation on behalf of the State. The appropriate starting place is the text of the Washington Constitution. The attorney general is mentioned in six provisions. Article III, section 1 identifies the offices of the executive department and provides for their election but creates no powers. Article III, section 3 specifies the term of office for all the executive officers, including the attorney general, other than the governor. Article IV, section 9 provides for removal of the attorney general. Article III, section 10 identifies the attorney general as fourth in line to perform the duties of the governor, should necessity arise. Under article III, section 24, the attorney general is charged with the duty of keeping "the public records, books and papers relating to" the office at the seat of government. Finally, and most pertinent to the present case, article III, section 21 provides, in relevant part:

> The attorney general shall be the legal adviser of the state officers, and shall perform such other duties as may be prescribed by law.

¶8 Article III, section 21 has a plain meaning. It establishes one power of the attorney general (i.e., to "be the legal

adviser of the state officers") and identifies a source of additional powers (i.e., laws that "may be prescribed"). WASH. CONST. art. III, § 21. The phrase "as may be prescribed by law" clearly refers to laws established after the adoption of the Washington Constitution; this much is clear from the term "may." Thus, "duties as may be prescribed by law" refers to those duties created by statute.

¶9 Importantly, there are no common law or implied powers of the attorney general under our constitution. This court has always insisted on finding an enumerated constitutional or statutory basis for the powers of executive officers, including the attorney general. One of the earliest cases relating to the attorney general's authority was *Seattle Gas & Electric*. In *Seattle Gas & Electric*, the attorney general brought a quo warranto action against a Washington corporation. 28 Wash. at 490. By statute, the legislature had given the prosecuting attorney the authority to institute quo warranto actions. *Id.* at 495. The issue before the court was whether the attorney general possessed authority to bring that action. This court concluded that he did not. *Id.* at 502-04. The *Seattle Gas & Electric* court's reasoning is instructive. It stated:

> The attorney general of the state, although bearing the same title as the attorney general of England, is not a common-law officer. . . . Every office under our system of government, from the governor down, is one of delegated powers.
>
> . . . To the constitution, therefore, and the laws enacted in pursuance thereof, we must look for these powers, and not to the common law.

*Id.* at 495-96. The *Seattle Gas & Electric* court clearly rejected the notion that the Washington Constitution vests the attorney general with common law powers.

¶10 Attorney General McKenna argues that the *Seattle Gas & Electric* court limited its holding in a statement it made in the course of its denial of a petition for rehearing. There, the *Seattle Gas & Electric* court stated that it was

"satisfied with the views expressed in the original opinion as to the common-law powers of the attorney general." *Id.* at 512. It then clarified the context in which the question arose: "At least, in this class of cases the attorney general has no common-law powers, because the legislature has seen fit to confer the power or duty ordinarily exercised at common law by the attorney general upon the prosecuting attorney." *Id.* This limitation on its holding was implicit in the original opinion; the court's holding could not have gone any further. Any further conclusions would have been dicta. The court did not, however, retreat from the *reasoning* it employed to arrive at that conclusion. To the contrary, it expressed *satisfaction* with those views. We have since repeatedly relied on *Seattle Gas & Electric* for the proposition that the attorney general possesses no common law authority. *See State v. O'Connell*, 83 Wn.2d 797, 812, 523 P.2d 872 (1974) (relying on *Seattle Gas & Electric*'s determination that the attorney general possesses no common law authority to approve a jury instruction stating that an action was beyond the attorney general's authority); *State ex rel. Hamilton v. Superior Court*, 3 Wn.2d 633, 640-41, 101 P.2d 588 (1940) (relying on *Seattle Gas & Electric*'s reasoning, including its statement that the attorney general " 'is not a common-law officer' " (quoting *Seattle Gas & Electric*, 28 Wash. at 495)); *State ex rel. Dunbar v. State Bd. of Equalization*, 140 Wash. 433, 438, 249 P. 996 (1926) (citing *Seattle Gas & Electric* for the proposition that "the *Attorney General* [does] not have common law powers"). Even a formal opinion of the attorney general relied on *Seattle Gas & Electric* to conclude that the attorney general has no common law authority. 1957 Op. Att'y Gen. No. 29, at 3 ("It is clear from [*Seattle Gas & Electric*] that powers with which the attorney general was clothed at common law do not inhere in the office of attorney general of this state unless they have been expressly granted by statute.").

■ ¶11 On every occasion that this court has been called upon to determine the authority of the attorney general, it

has looked exclusively to the attorney general's constitutional power to serve as legal adviser to state officers and to statutes. *See, e.g., Young Ams. for Freedom v. Gorton*, 91 Wn.2d 204, 207-09, 588 P.2d 195 (1978) (hereinafter *YAF*) (relying on attorney general's statutory role as legal adviser to state officials and agencies to justify filing of amicus brief); *State v. Taylor*, 58 Wn.2d 252, 256-57, 362 P.2d 247 (1961) (relying on former RCW 43.10.030(1) (1951) for the attorney general's authority to enforce charitable trusts); *Dunbar*, 140 Wash. at 439 (premising attorney general's authority on statutory duty to institute actions necessary to the execution of duties of state officers); *Jones v. Reed*, 3 Wash. 57, 65-66, 27 P. 1067 (1891) (identifying statutory basis for attorney general's power to enforce the proper application of state funds); *cf. Young v. State*, 19 Wash. 634, 54 P. 36 (1898) (finding, without consideration of common law authority, that the governor, whose executive power is supreme, lacked authority to enter into contract). We take the same approach in *Goldmark v. McKenna*, 172 Wn.2d 568, 259 P.3d 1095 (2011), noting that the "other duties as may be prescribed by law," WASH. CONST. art. III, § 21, "are statutorily prescribed," *Goldmark*, 172 Wn.2d at 572, and relying solely upon statutes to determine the scope of the attorney general's duties and authority.

¶12 In sum, the text of the Washington Constitution and our consistent interpretation of the attorney general's constitutional authority make clear that the Washington Constitution does not vest the attorney general with any common law powers. The attorney general's authority is solely to "be the legal adviser of the state officers" and to perform those duties prescribed by statute. WASH. CONST. art. III, § 21. The Washington Constitution, therefore, does not directly give the attorney general the authority to sue on behalf of the State of Washington, at least when not done on behalf of another state officer. Attorney General McKenna does not claim to be acting in his capacity as legal adviser to

any other state officer in joining the multistate litigation. As a result, we must now turn to whether the attorney general's action was authorized by statute.

## 2. Statutory Authority

¶13 Attorney General McKenna notes several statutes that he contends vest him with the authority to initiate litigation on behalf of the State. We find RCW 43.10.030 to be dispositive of the present action. RCW 43.10.030 sets forth a number of powers and duties of the attorney general. That statute provides, in relevant part:

> The attorney general shall:
> . . . [a]ppear for and represent the state before the supreme court or the court of appeals in all cases in which the state is interested.

RCW 43.10.030(1). Interpretation of this statute is not a matter of first impression. Precedent establishes that this statute confers broader authority than the plain text indicates.

¶14 In *Taylor*, we held that an earlier version of RCW 43.10.030(1) provided the attorney general with the authority to institute a legal proceeding to enforce a public trust in a trial court. 58 Wn.2d at 255-56. The *Taylor* court relied on an erroneous codification of the law. The operative session law provided that "[t]he attorney general shall have the power and it shall be his duty . . . [t]o appear for and represent the state before the supreme court in all cases in which the state is interested." LAWS OF 1929, ch. 92, § 3 (codified as REM. REV. STAT. ch. 9, § 112). However, the incorrect codification relied on by the *Taylor* court stated that " '[t]he attorney general shall . . . [a]ppear for and represent the state before *the courts* in all cases in which the state is interested.' " 58 Wn.2d at 256 (emphasis added) (quoting former RCW 43.10.030(1) (1951) (codified incorrectly from REM. REV. STAT. ch. 9, § 112)). The *Taylor* court held that this provision vested the attorney general with the authority to act whenever (1) the matter was one in

which the State is interested and (2) there exists a "cognizable common law or statutory cause of action." *Id.* at 256-57. The city of Seattle is correct that the erroneous wording was central to the *Taylor* court's holding.

¶15 Four years after *Taylor* was decided, in 1965, the legislature enacted legislation correcting the Revised Code of Washington by replacing "the courts" with "the supreme court."[2] LAWS OF 1965, ch. 8, at 525. In 1971, the legislature amended RCW 43.10.030(1), this time to include the recently created Court of Appeals. Following that change, former RCW 43.10.030 (1971) provided, in relevant part, that "[t]he attorney general shall: appear for and represent the state before the supreme court or the court of appeals in all cases in which the state is interested." Former RCW 43.10.030(1) (1971). If this were the extent of the history of the provision, we might be inclined to treat *Taylor* as an aberration corrected by subsequent legislative enactments.

¶16 In 1978, this court decided *YAF* and gave new life to *Taylor*. In *YAF*, the plaintiffs challenged the attorney general's filing of an amicus curiae brief in the United States Supreme Court in the case of *Regents of the University of California v. Bakke*, 438 U.S. 265, 98 S. Ct. 2733, 57 L. Ed. 2d 750 (1978), a case concerning affirmative action. *YAF*, 91 Wn.2d at 205-06. This court identified two alternative sources of the attorney general's authority to file the amicus curiae brief: first, his role as "legal adviser" to state officials and state agencies under the Washington Constitution and RCW 28B.10.510, 43.10.030(2), and 43.10.040, *id.* at 206-09; and second, the authority granted to the attorney general by RCW 43.10.030(1), *id.* at 209. The *YAF* court adopted the *Taylor* court's interpretation of RCW 43.10.030(1) and found that "the State had an adequate interest in the outcome of the *Bakke* litigation" and that "the filing of an amicus curiae brief is cognizable both at common law and by authorized court rule." *Id.* at 209-10.

---

[2] An explanatory note following the legislation states that this change was made "to restore session law language." LAWS OF 1965, ch. 8, at 748.

Importantly, the *YAF* court issued its decision under a version of RCW 43.10.030 that is substantively identical to the present one:

> The attorney general shall:
> ... [a]ppear for and represent the state before the supreme court or the court of appeals in all cases in which the state is interested.

Former RCW 43.10.030(1) (1975). RCW 43.10.030(1) has not been amended since our decision in *YAF*.

¶17 Under our decisions in *Taylor* and *YAF*, RCW 43.10-.030(1) grants the attorney general discretionary[3] authority to act in any court, state or federal, trial or appellate, on "a matter of public concern," *Taylor*, 58 Wn.2d at 256, provided that there is a "cognizable common law or statutory cause of action," *id.* at 257. Though this construction appears to be predicated upon an erroneous codification of the statute, the legislature has acquiesced in our interpretation for over 30 years. *Cf. City of Federal Way v. Koenig*, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009) ("This court . . . takes [the legislature's] failure to amend a statute following a judicial decision interpreting that statute to indicate legislative acquiescence in that decision."). Our interpretations of statutes form the background against which the legislature acts. We are reticent to remove from that background an interpretation that our coordinate branches of government have relied upon for such a lengthy period.

¶18 In the present case, Attorney General McKenna made the State of Washington a party to a lawsuit against the United States challenging the constitutionality of the PPACA. The PPACA is unquestionably a matter of public concern in which the State has an interest; its provisions directly affect residents of the state in numerous ways,

---

[3] Though the term "shall" generally creates a mandatory duty, *see Goldmark*, 172 Wn.2d at 576, case law has established that, in the context of RCW 43.10.030, the use of "shall" creates only a discretionary duty. *Berge*, 88 Wn.2d at 761; *Boe*, 88 Wn.2d at 775.

including, as relevant here, by expanding access to Medicaid, PPACA, Pub. L. No. 111-148, § 2001, and requiring payment of a monetary penalty by certain persons not covered by "minimum essential" health insurance, *id.* § 1501(B). It is also undisputed that there is a cognizable statutory cause of action to enjoin enforcement of unconstitutional actions by the United States government. 28 U.S.C. § 2201(a). As such, Attorney General McKenna acted within the authority granted to him by RCW 43.10.030(1) when he made the State of Washington a party to the multistate action seeking to enjoin enforcement of the PPACA.

¶19 The final issue raised in this case is whether Attorney General McKenna properly made the State of Washington a party to the multistate action, as opposed to acting in his individual, official capacity. The general rule is that where the attorney general is authorized to bring an action, he or she is authorized to do so in the name of the State. *State v. Asotin County*, 79 Wash. 634, 638, 140 P. 914 (1914). In her amicus curiae brief to this court, Governor Gregoire argues that where the governor and attorney general disagree, the attorney general may not proceed in the name of the State. This argument is not wholly without merit, as article III, section 2 of the Washington Constitution vests in the governor "[t]he supreme executive power of this state." Moreover, we have previously interpreted this language to accommodate the governor's superior authority where the attorney general and governor disagree on the correct course of action. *State ex rel. Hartley v. Clausen*, 146 Wash. 588, 592-93, 264 P. 403 (1928) (holding that the governor may initiate an action to restrain the unlawful expenditure of state funds where the attorney general fails or refuses to act). However, the governor is not a party to the present action; Governor Gregoire neither initiated this petition for mandamus nor intervened. As the city of Seattle points out in its brief, "[i]f [the attorney general] possessed statutory authority to join the State as a plaintiff in the Florida case and the Governor objected, that would

be a different case for resolution another day." Pet'r's Reply Br. (Redacted) at 13. We agree and leave for the appropriate case the issue of what result the Washington Constitution compels where the governor disagrees with the attorney general's discretionary decision to initiate litigation and seeks to preclude the attorney general's action.

## CONCLUSION

¶20 The framers of the Washington Constitution designed an executive branch of government that dispersed authority among several officers. In addition to assigning certain duties to each officer, the framers left additional duties to be determined by future generations in the exercise of self-government. The people of the state of Washington have, by statute, vested the attorney general with broad authority, and Attorney General McKenna's decision to sue to enjoin the enforcement of the PPACA falls within that broad authority. As such, Attorney General McKenna has no mandatory duty to withdraw the State from the multistate litigation. The city of Seattle's petition for a writ of mandamus must, accordingly, be denied.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, CHAMBERS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶21 ALEXANDER, J. (concurring) — I agree with the majority that the attorney general has statutory authority to challenge the constitutionality of the recently enacted federal health care statute on behalf of the State of Washington. I also acquiesce in the majority's decision to "assume, without deciding, that the city of Seattle has standing to pursue the present action." Majority at 555.

¶22 I write separately simply to express my view that if we had addressed the standing issue, I am doubtful that Seattle could have established standing to maintain this action under any of the four doctrines that could have

provided it with authority to bring this suit: traditional, representational, liberalized, or taxpayer. Seattle's assertion that it has taxpayer standing is a particular stretch. I say that because in order to bring a taxpayer suit, " 'the complaint must allege both a taxpayer's cause of action and facts supporting taxpayer status.' " *Greater Harbor 2000 v. City of Seattle*, 132 Wn.2d 267, 299, 937 P.2d 1082 (1997) (Sanders, J., dissenting) (quoting *Dick Enters., Inc. v. King County*, 83 Wn. App. 566, 572-73, 922 P.2d 184 (1996)). Seattle has not pleaded taxpayer status here, nor can any support for such standing be found in any submitted documents. Furthermore, it is questionable if a municipal corporation, like Seattle, can claim taxpayer status.[4] Even if it can claim such status, Seattle concedes that it failed to make a demand on Attorney General McKenna to cease participation in the health care litigation before it brought suit against him. Such a demand is a condition precedent to the maintenance of a taxpayer's suite. *Reiter v. Wallgren*, 28 Wn.2d 872, 184 P.2d 571 (1947). While Seattle asserts that such a demand would have been a useless gesture, I doubt that we would have indulged a presumption that the attorney general would not give appropriate consideration to such a demand if it had been properly made.

J.M. JOHNSON, J., concurs with ALEXANDER, J.

¶23 SANDERS, J.[*] (concurring) — I agree with the majority that the attorney general's powers include initiation of the suit at issue. I write separately, however, to note this result, which was based solely on the constitution and statute, not

---

[4] Seattle contends that we can take judicial notice that the city is a taxpayer under WAC 458-20-189. This regulation "discusses the business and occupation (B&O), retail sales, use, and public utility tax applications to sales made to and by the state of Washington, counties, cities, towns, school districts, and fire districts." WAC 458-20-189(1).

[*] Justice Richard Sanders is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

the common law, requires we overrule our previous decisions in *State v. Taylor*, 58 Wn.2d 252, 362 P.2d 247 (1961), and *Young Americans for Freedom v. Gorton*, 91 Wn.2d 204, 209, 588 P.2d 195 (1978) (hereinafter *YAF*).

¶24 The *Taylor* court held the attorney general was authorized to enforce a charitable trust *without* express statutory authorization. *Taylor*, 58 Wn.2d at 255; *YAF*, 91 Wn.2d at 209. In *Taylor* we stated, "It has long been recognized that at common law the Attorney General has the duty of representing the public interest in securing the enforcement of charitable trusts." *Taylor*, 58 Wn.2d at 255. We also acknowledged that the Washington Constitution and former RCW 43.10.030 (1951) "certainly d[id] not embody a clear command to the Attorney General to enforce charitable trusts."[5] *Id.* at 256. Nevertheless because "the proper management of charitable trusts is a matter of public concern," we determined that the attorney general was authorized to represent the public interest. *Id.* We further asserted, "RCW 43.10.030(1) does not, of course, authorize the Attorney General to bring an action in the courts if no cognizable common law or statutory cause of action can be stated." *Id.* at 257. The *Taylor* court explicitly stated the attorney general is not deriving his power from the Washington Constitution or applicable statutes; thus, the only authority that remains is the common law. Because the attorney general's authority is not a divine right, I interpret our holding in *Taylor* as recognizing common law powers in the attorney general.

¶25 Thereafter in 1978 the *YAF* court adopted *Taylor*'s rejection of "the requirement of express statutory authorization." *YAF*, 91 Wn.2d at 209. In *YAF* we held the attorney general was authorized to file an amicus brief on behalf of the State of Washington even though *not* "specifically

---

[5] I need not address the misprinted version of former RCW 43.10.030 quoted in *Taylor*, 58 Wn.2d 252, because we found, in the context of charitable trusts, former RCW 43.10.030 did not grant authority to the attorney general to enforce such trusts.

authorized by the pertinent constitutional and statutory provisions." *Id.* This court cannot create authority out of thin air; we must rely on some source. Again the only remaining power is common law. Because *Taylor* and *YAF* necessarily rely on a mistaken common law authority in the office of the attorney general, they must be overruled.

¶26 I concur.

STEPHENS, J., concurs with SANDERS, J. PRO TEM.