## Williams, for Use and Benefit of Pike County v. Stallard, et al.

(Decided June 20, 1919.)

### Appeal from Pike Circuit Court.

Counties—Fiscal Courts.—It is the primary duty of the fiscal court to look after the fiscal affairs of the county and to maintain suits and other proceedings to recover money belonging to the county including that wrongfully paid to individuals, and before a citizen and taxpayer can institute such a suit or proceeding it must be alleged and if denied proven that the fiscal court or other proper county authority has declined or refused to do so; but whether facts might exist which would dispense with such precedent conditions is not determined, since the question is not raised.

WILLIS STATON for appellant.

CHILDERS & CHILDERS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

H. H. Stallard at the regular election day in 1911 was elected to the office of county judge of Pike county to fill out the unexpired term, and at the regular election in 1913 he was re-elected for the following full term, and entered upon the discharge of the duties of his office for that term on the first Monday in January, 1914. Prior to his election for the unexpired term and on October 20, 1911, the fiscal court of the county entered an order reading: ''It is ordered by this court that the salary of the county judge to be elected on November 7, 1911, shall be $900.00 per annum.'' The order also fixed the salaries of other officers concerning which, however, there is no controversy here. Notwithstanding the order fixing the salary at $900.00 prior to his election to fill the vacancy it is alleged that the fiscal court allowed and paid to him $1,500.00 for each of his two years' service of that term. There was no order, according to the petition, ever made by the fiscal court fixing the salary of the county judge for the succeeding full term to which Stallard was elected in 1913, and the fiscal court from year to year allowed him $2,000.00 as salary during that term. After he had been paid his salary for two years of his full term and on January 10, 1916, this suit was brought by appellant, U. K. Williams, against him, in which plaintiff alleged that as a citizen and taxpayer of the county he filed the suit on behalf of himself and all other taxpayers for the use and benefit of the county, and he sought to recover from the defendant the sum of $3,400.00, which he charged was excess of salary paid to him over and above the sum which he was entitled to collect under the order of the fiscal court of October 20, 1911. In making this contention plaintiff necessarily insists that the order referred to fixing the salary applied not only to the unexpired term for which defendant was first elected but also to the regular term to which he was last elected, but for reasons appearing further on we need not determine that question on this appeal.

In addition to the excess salary sought to be recovered plaintiff furthermore alleged that defendant as county judge had, from time to time during his incumbency in office, wrongfully and unlawfully ordered paid out of the county funds to the various justices of the peace of the county and to others large sums of money, an itemized statement of which is filed with the petition aggregating $89,347.11.

From the allegations of the petition it is a difficult matter to determine the precise ground upon which the recovery beyond the alleged excess salary is sought; i. e. the facts claimed by plaintiff as rendering the payment of the items unlawful, or without authority, are not by any means made clear by the petition, but we gather from what is alleged that plaintiff contends that those items were paid out, or at least most of them, for material and services used upon the public roads and public bridges of the county under a method which the county had no right to pursue at the time. The petition was afterwards amended and the county treasurer, the various justices of the peace, together with the bondsmen of each, and the sureties of the county judge for each of the years that he executed bond, were made parties to the suit. Various motions to paragraph, elect and to strike out were made, but many of such motions are not found in the record. Special and general demurrers were filed as well as answers; none of the latter being in the record. On the contrary, it shows that each of the answers was withdrawn by an order of the court so that were we called upon to determine the case upon the merits it would be a task almost impossible of performance.

In addition to the above relief an injunction was sought against all the members of the fiscal court and the county treasurer forbidding the former from ordering any money of the county wrongfully or illegally paid and the latter from paying any sums that might be illegally or unlawfully ordered by the county judge or fiscal court.

Upon submission on the pleadings and exhibits without any testimony being taken the circuit court sustained some of the motions as well as some of the general demurrers and also sustained the special demurrer to the petition upon the ground that plaintiff had not alleged or shown facts entitling him to maintain the suit for the use and benefit of the county, but there was no order dismissing the petition. From that judgment an appeal was prosecuted to this court which, upon motion, was dismissed, because the order from which the appeal was prosecuted was not a final but only an interlocutory one. When the case got back to the lower court after the dismissal here a new fiscal court had been elected and plaintiff applied to it and requested that the new fiscal court join with him in the suit, which was refused,

and he then offered an amended petition setting up that fact, to the filing of which defendants objected and the court sustained their objection and declined to permit the amendment to be filed. Plaintiff declining to plead further, the petition was dismissed and from that order this appeal is prosecuted.

The tendered amendment was not made a part of the record either by an order of court or by any bill of exceptions, and under a familiar rule of practice it cannot be considered by us even were we of the opinion that it contained facts sufficient to authorize plaintiff to maintain the suit. It will be observed that the amendment does not allege a demand or request of the fiscal court to sue for the matters complained of in the petition but only that it come into *this* suit which had been prosecuted in such a way as to create a large and voluminous record, when the request was made, but whether such a request is equivalent to asking the court to bring the suit in the name of the county is a question which is not before us. Nowhere in the original petition nor in any amendment thereto, up to the refused one after the return of the case, is there any averment of any application to either the fiscal court, the county attorney or to any other officer or agency of the county, to file the suit or to take any steps looking to a correction of the delinquencies complained of, nor is there an allegation that any of them refused to do so. It was upon this ground that the court sustained the special demurrer filed to the petition as amended, and since the last amendment offered but not filed was in no way made a part of the record so that it might be considered by us, we must decide the case upon the state of the record as it existed when the special demurrer was sustained.

This court has uniformly held in a long list of cases that sections 1834, 1839, 1840, and perhaps others, of the Kentucky Statutes, made and constituted the fiscal court the agency of the county to look after the arranging for and the collecting of the finances of the county as well as their disbursement for county purposes within the limitations prescribed by law, and those sections with others relating to the powers and duties of the county judges and the county attorney, have been construed to lodge with such officers and agencies the primary right to institute and conduct all suits and proceedings looking to the preservation of the fiscal affairs of the county. The

opinions hold that while a citizen and taxpayer is directly interested in such matters he cannot start the machinery of the courts in motion upon his own initiative unless some officer or agency of the county, whose primary duty it is to do so upon request, has declined. That while the efforts of the citizen and taxpayer to see that the public funds of the county are not misappropriated and squandered is to be encouraged and commended (Fox v. Lantrip, 169 Ky. 759), still it is better that before the courts will recognize such efforts of the citizen and taxpayer, by upholding a suit or proceeding instituted by him, it should be made to appear that the one whose primary duty to do so upon request has declined. Any other rule would open the door of the courts to any over-officious citizen who might be dissatisfied with some lawful action of the fiscal court or who might entertain a personal grievance or grudge against some member thereof or against some officer or person affected, however groundless, to file unwarranted suits resulting in an unnecessary loss of time to the officers of the county and also to the courts in disposing of the cases. It would also result in lending encouragement to one who is not vested with duties or discretion in such matters to substitute his judgment and discretion for that of those to whom the law has confided them.

Hence in the case of Commonwealth, etc. v. Tilton, 20 Ky. Law Rep. 1056, it was held that before a citizen could maintain a suit like this it must be shown that the one who had the primary right to bring the suit refused to do so. That case was brought by a citizen to recover from the county judge and his bondsmen the loss which the county was alleged to have sustained because the judge had not required of the sheriff a sufficient bond. A special demurrer was sustained to the petition and it was dismissed. The judgment was affirmed, and in the opinion this court said:

"The petition nowhere alleges that the fiscal court had ever refused to take steps to recover this amount due, or had refused to authorize suit to be brought, or even had ever been asked so to do and had failed.

"Section 1834, Kentucky Statutes, provides: 'Unless otherwise provided by law, the corporate powers of the several counties of this state shall be exercised by the fiscal courts thereof respectively,' and by section 1840 it is provided, among other things, that the fiscal court

shall regulate and control the fiscal affairs and property of the county.

"We are of opinion that by these two sections of the statute all right of action for and on behalf of the county is in the fiscal court; and that until that court refused to institute suit no one else may do so.

"Because of a failure to allege a refusal by the fiscal court to institute proceedings the special demurrer as to capacity to sue was properly sustained."

A petition for rehearing was filed which was overruled in a response found on page 1216 of the same volume.

The doctrine of that case was adhered to but explained in the one of Hopkins County v. Givens, 29 Ky. Law Rep. 993, in which the court quoted with approval the above excerpt and then added:

"But it was not held (in the Tilton case) that an action could not be instituted in the name of the county by direction of the county judge when the fiscal court had refused to direct an action to be brought;" thus emphasizing the rule that with the fiscal court is lodged the primary duty of bringing such actions.

The case of Fox v. Lantrip, *supra,* was brought by taxpayers of the county against the county school superintendent to recover for the use and benefit of the county excess salaries paid to the superintendent over the amount fixed in the order of the fiscal court (just as is one of the items here), the public authorities having upon application, refused to bring suit, and in the opinion it is said:

"And when, as in this case, the public authorities whose duty it is to bring a suit to recover public funds wrongfully paid out, refuse to do so, and the duty is thus imposed on the citizen in his private capacity, he should be allowed his attorneys' fees if successful."

The same conditions existed in the later case of Mills v. Lantrip, 170 Ky. 81. That suit, as in the Fox case, was brought in the name of some citizens and taxpayers of Hopkins county and was filed against the county clerk to recover $1,888.91 alleged to have been wrongfully paid to him. The plaintiffs in that suit alleged that they had made written demand of the fiscal court to institute it or to take such proceedings as were necessary to recover into the treasury of the county the sums alleged to have been wrongfully paid to the clerk. Objection was there

made to the right of the plaintiff to maintain the action, but this court in answering that objection said:

"We certainly cannot concur in this contention (that plaintiffs could not maintain the suit) of counsel for appellant. It is alleged in the petition and admitted in the answer that before this action was instituted appellees filed a written request with the fiscal court, that it bring such an action, and it is further alleged in the petition that the fiscal court failed and refused to do as requested by appellees."

These authorities undoubtedly hold, some of them expressly and some of them impliedly, that before a private citizen is authorized to institute a proceeding like this it must be shown that the county authorities whose primary duty it is to do so have upon proper application refused.

The petition undoubtedly states a cause of action as to the excess salary collected by the county judge for the two years of his first term, and it is with some reluctance that we arrive at the conclusions herein expressed, for as said in the Mills case, "not only should the courts of justice not discourage or frown upon the efforts on the part of citizens of the state to compel a strict observance by public officials of their duties and obligations, but, upon the other hand, they ought, so far as authorized by law, encourage such practice." As said, however, in a former part of this opinion, the orderly administration of public affairs would best be subserved by confining the right to maintain such suits to the public authorities in whom the law vests the right, until it is shown that for whatever reason such authorities declined to act, in which case the citizen for himself and all others, in the name of the county, may correct the wrongs which the public authorities declined to do by resorting to the appropriate remedy. It is the disposition of the citizen after such declination to take the matter in hand and rectify the wrong that the law encourages and commends.

There is nothing appearing in this case which would dispense with the necessity of making the prior application to the fiscal court or other public authority and their refusal to bring the suit as conditions precedent to the right of plaintiff to do so.

We are therefore constrained to hold that the order of dismissal was proper and the judgment is affirmed.