[No. 30248. Department Two. August 28, 1947.]

C. O. MALMO *et al., Respondents,* v. OTTO CASE, *as Commissioner of Public Lands, Appellant.*

THE STATE OF WASHINGTON, *on the Relation of C. O. Malmo et al., Respondents,* v. OTTO CASE, *as Commissioner of Public Lands, Appellant.*

C. O. MALMO *et al., Respondents,* v. OTTO CASE, *as Commissioner of Public Lands, Appellant.*[1]

[1]Reported in 184 P. (2d) 40.

*R. A. Moen,* for appellant.

*Riddell, Riddell & Hemphill,* for respondents.

SCHWELLENBACH, J.—This is an appeal by Otto Case, as commissioner of public lands, from a decree declaring that state timber contracts, numbered 15, 19, 21, and 22, are valid subsisting contracts whereby the state of Washington agreed to sell, and the plaintiffs agreed to buy, the timber therein described; ordering the defendants to immediately outline the territory of the uncut trees sold; permitting plaintiffs to cut and remove said timber; extending the time for the performance of the contract for a period of one year; and restraining and enjoining Otto Case, as commissioner of public lands, from interfering with the cutting and removal of the timber and from prosecuting or attempting to prosecute plaintiffs for trespass in connection with the execution of the four contracts.

This matter was before this court in *State ex rel. Malmo v. Case,* 25 Wn. (2d) 118, 169 P. (2d) 623 (decided May 29, 1946), in which all of the material facts occurring up to that time were stated and, by reference, are made a part of this opinion. That case was an original application in this court for the issuance of a writ of mandamus to compel the commissioner of public lands to mark for cutting certain timber located on state property, and to permit relators to remove and log such timber. We refused to accept original jurisdiction and denied the application.

Following such denial, nothing further was done until September 20, 1946, when the plaintiffs wrote a letter to the board of state land commissioners renewing their request for an extension of time on their contracts. Mr. Case replied on October 1st:

"Gentlemen:

"I have your letter of September 20th with reference to an extension of time for removal of timber under your cutting contracts Nos. 15, 19, 21 and 22.

"As a matter of record, this office advised you as well as other members of the State Land Board that the granting of extensions of time were strictly the duty of the Commissioner of Public Lands and not subject to consideration by the Land Board.

"This office notified your company approximately a year ago that no extension would be granted on any of the cutting permits in the area designated. This action was taken even though the majority of the Land Board had voted to grant the extension. Our men were sent to the district to be sure that no operations were carried on after the expiration of the previous extension period. We again advise you that there will be no extensions granted and no additional timber marked in the areas designated in your letter.

"Very truly yours,"

The board held a meeting October 4, 1946, at which there were three members present. Upon motion, duly made and seconded, it was voted two to one to extend the contracts for one year, until October 19, 1947, and ordered that the timber be marked by a board cruiser.

Mr. Case reiterated at that meeting his stand that the board had no authority to pass upon extensions, and that he would refuse to grant the extensions or mark further timber for cutting.

Plaintiffs, on November 1, 1946, commenced an action in the superior court of Jefferson county by notice of appeal from an order of the commissioner of public lands refusing to perform under the contracts, and refusing to extend the time for cutting and removing the timber sold under the contracts. Two other actions were commenced in the superior court of Thurston county; one, an action for a writ of mandate to require the commissioner of public lands and the board of state land commissioners to carry out the provisions of the contracts, and the other, an action seeking a declaratory judgment that the contracts are valid and enforcible and in full force and effect; that the court decree that plaintiffs are entitled to have the timber within the territorial limits of said contract which comply with the specifications of the timber in the contracts cut and removed; that the court appoint a competent cruiser to mark

the trees; that Otto Case be restrained from interfering with the marking of said timber or the removal of the same; and that the court decree that in removing this timber plaintiffs shall not be guilty of trespass.

Motions to quash the writ in the mandamus action, together with a demurrer, were filed by Mr. Case, who also appeared by answer and cross-complaint. Mr. Case demurred to the complaint in the declaratory judgment action. He also appeared in that action by answer. In the two Thurston county cases, the defendants, Smith Troy, Belle Reeves, Russell Fluent, and Pearl Wanamaker, comprising the other members of the state board of land commissioners, filed answers to the cross-complaint of the commissioner of public lands, to which he replied. Motions were directed against the affirmative pleadings of the commissioner. The preliminary motions were denied, and the demurrers overruled. By stipulation, the Jefferson county cause was transferred to Thurston county, and all three causes consolidated for trial, which resulted in the judgment as already stated. Findings of fact and conclusions of law were entered with the judgment. The trial court found that the action of the commissioner of public lands in refusing to permit the plaintiffs to have the timber marked and removed was arbitrary and capricious.

Respondents contend that, the board of state land commissioners having made an administrative determination that the contracts should be extended for one year, and the commissioner of public lands having failed within the statutory period to appeal to the superior court from such determination, he could not, because of this, collaterally attack the action of the board as a defense to an action brought to enforce the determination of the board.

In considering this contention, we are immediately confronted with the problem of determining whether or not the board or the commissioner has power to grant extensions of time under the contracts in question.

Laws of 1927, chapter 255, p. 468 (Rem. Rev. Stat., § 7797-1 [P.P.C. § 940-109] *et seq.*), is a comprehensive act compris-

ing 201 sections, providing for the sale or lease of lands, timber, and minerals belonging to the state.

Section 31 of the act provides that timber, fallen timber, stone, gravel, or other valuable materials situated upon state lands, with certain exceptions, may be sold separate from the land, when in the judgment of the commissioner of public lands, it is for the best interest of the state to sell the same.

Section 38 authorizes the commissioner to subpoena witnesses to ascertain the value and character of timber to be sold.

Section 46 provides that the commissioner shall fix the date of sale and advertise the same, when he shall have decided to sell any timber.

Section 33 provides:

" . . . In all cases where timber, fallen timber, stone, gravel, or other valuable material, is sold separate from the land, the same shall revert to the state if not removed from the land within five years from the date of the purchase thereof: *Provided,* That in all cases where, in the judgment of the commissioner of public lands, the purchaser is acting in good faith and endeavoring to remove such material, the commissioner may extend the time for the removal thereof for any period not exceeding ten years, upon payment to the state of a sum, to be fixed by the commissioner, of not less than one nor more than two dollars per acre per annum, . . ."

This section applies only to timber which has been sold and not removed. We find no statute which specifically authorizes the land commissioner or the state board of land commissioners to extend or refuse to extend the time of performance of a contract for the purchase of timber. Neither do we find any statute which would prohibit such an extension or refusal to extend.

Laws of 1941, chapter 217, p. 681, § 3 (Rem. Supp. 1941, § 7797-23A [P.P.C. § 940-519]), provides:

"The Board of State Land Commissioners shall exercise general supervision and control over the sale or lease for any purpose of land granted to the state for educational purposes and also over the sale of timber, fallen timber,

stone, gravel and all other valuable materials situated thereon. It shall be the duty of the Commissioner of Public Lands, on its request, to furnish the Board with all reports, data and information in the records of his office pertaining to any such proposed sale or lease, and the Board of State Land Commissioners shall have power, if it deems it advisable, to order that any particular sale or lease of such land or valuable materials be held in abeyance pending further inspection and report. The Board may cause such further inspection and report of land or materials involved in any proposed sale or lease to be made and for that purpose shall have power to employ its own inspectors, cruisers and other technical assistants. Upon the basis of such further inspection and report the board shall determine whether or not, and the terms upon which, the proposed sale or lease shall be consummated."

On August 7, 1942, the board of state land commissioners met, considered, and determined the terms of the contracts. Contract No. 15, the terms of which were similar to those of the other contracts, was executed July 13, 1943, between the state of Washington, represented by the commissioner of public lands, Jack Taylor, and the Olympic Logging Company. It provided:

"All timber, whether standing or fallen, not removed from the land by the Second Party or those claiming under the Second Party, prior to October 30, 1943, shall revert to and become the property of the State of Washington as fully and to all intents and purposes as if this agreement had not been made, and the rights of said Second Party and those claiming under said Second Party to cut or remove timber from said lands, shall utterly cease after October 30, 1943; PROVIDED, that in all cases the Second Party is acting in good faith in removing said timber, the Commissioner of Public Lands, may extend the time of removal in accordance with all statutes governing, in which event all timber either standing or fallen not removed at the expiration of such extension, shall revert to and become the property of the State as fully and to all intents and purposes as if said extension had not been made."

█ The above provision of the contract clearly authorizes the commissioner of public lands, in the event the

contractor is acting in good faith in removing the timber, to extend the time of performance of the contract. The contract, under its terms, was to have been completed in one hundred eight days. It would have been physically impossible to have gotten the equipment in and have completed the contract in that short period of time. This is shown by the extensions which were granted. It, therefore, is evident that the purpose of this provision was to grant the commissioner the right to extend the time of performance of the contract.

It will be seen that, as a part of the exercise of general supervision and control granted to the board of state land commissioners under Laws of 1941, chapter 217, it had the power to determine whether or not a sale of timber should be consummated, and, if it did so decide, it had the power to determine the terms of the sale. We held in *Phillips v. Welts*, 40 Wash. 501, 82 Pac. 737, that the board of county commissioners have the power, in ordering sales of county property, to require that the sales shall be subject to their approval under a statute providing that they may fix the terms of sale. The board, in the case at bar, had the power under the statute, if it so desired, to provide as one of the terms of sale

" . . . that in all cases the Second Party is acting in good faith in removing said timber, the *Board of State Land Commissioners* may extend the time of removal."

But it did not do this; it delegated this power to the commissioner. The contracts provided that payments were to be based upon scale reports as furnished by a scaler designated by the commissioner of public lands; that he should be the sole judge as to whether the timber had been properly logged; that he reserved the right to designate the type and location of roads; that he had the right to extend the time of removal.

A study of the entire contract convinces us that when the board, after investigation, determined that the sales should be made and dictated its terms, it stepped out of the transaction entirely, and left all of the administrative functions under the contract to the commissioner. Neither was

he acting as the board's agent. He was performing, and it was its intention, in dictating the terms of the contracts, that he perform, under the powers granted to him as commissioner of public lands. When the board determined that the sales be had, and dictated the terms thereof, it performed its statutory duty of determining "whether or not, and the terms upon which, the proposed sale or lease shall be consummated."

The trial court found that the commissioner acted in an arbitrary and capricious manner. This finding was based upon the assumption that he was acting without power. Since it has been determined that he did have power to extend or refuse to extend the time of performance, the reason for such a finding utterly disappears. We have examined the record and conclude that he acted in good faith throughout the entire transaction. The war emergency, which had influenced the board at the insistence of Mr. Brundage to ignore the provisions of Laws of 1933, chapter 175, p. 682 (Rem. Rev. Stat. (Sup.), § 7879-1 [P.P.C. § 940-143]), known as the "state sustained yield act," had come to an end, and the commissioner was entirely justified in refusing to grant any further extensions under the contracts.

Contract No. 21, which was the last of the four under consideration in time, was to have been completed January 27, 1944. It provided that the timber not removed should then revert to the state of Washington. It further provided,

" . . . and the rights of said Second Party, and those claiming under said Second Party, to cut or remove timber from said lands shall utterly cease after January 27, 1944";

unless an extension was granted by the commissioner of public lands. The other three contracts had similar provisions. January 27, 1944, was the last date of performance under any of the four contracts. The commissioner had refused to extend these contracts beyond October 19, 1945. By his refusal to grant an extension, the right of respondents under the contract to cut or remove timber

utterly ceased on that date unless they exerted their right of appeal, as provided in Laws of 1927, chapter 255, p. 532, § 125 (Rem. Rev. Stat., § 7797-125 [P.P.C. § 940-13]), as follows:

"Any applicant to purchase, or lease, any public lands of the state, or any valuable materials thereon, and any person whose property rights or interests will be affected by such sale or lease, feeling himself aggrieved by any order or decision of the board of state land commissioners, or the commissioner of public lands, concerning the same, may appeal therefrom to the superior court of the county in which such lands or materials are situated, by serving upon all parties who have appeared in the proceedings in which the order or decision was made, or their attorneys, a written notice of appeal, and filing such notice, with proof, or admission, of service, with the board, or the commissioner, within thirty days from the date of the order or decision appealed from, and at the time of filing the notice, or within five days thereafter, filing a bond to the state, in the penal sum of two hundred dollars, with sufficient sureties, to be approved by the secretary of the board, or the commissioner, conditioned that the appellant shall pay all costs that may be awarded against him on appeal, or the dismissal thereof. . . ."

No appeal was taken from this ruling.

However, following the ruling by this court in *State ex rel. Malmo v. Case, supra,* respondents on September 20, 1946, made another application to the board for another extension, which was approved by a majority of the board October 4, 1946. Upon the refusal of the commissioner to act, this action was commenced in superior court November 1, 1946, and has been challenged as not being timely under Rem. Rev. Stat., § 7797-125. We do not feel called upon to determine whether the appeal of the respondents from the refusal of the commissioner was timely under the statute, because on the merits of the case, we conclude that, under the contracts, the commissioner of public lands had the power to grant or refuse to grant, extensions. His refusal to do so was in entire good faith. He did not act arbitrarily or capriciously. The judgment appealed from is, therefore, reversed.

MALLERY, C. J., ROBINSON, and JEFFERS, JJ., concur.

HILL, J. (concurring)—The contracts here in question constituted violations of the state sustained yield act, Laws of 1933, chapter 175 (Rem. Rev. Stat. (Sup.), § 7879-1). Their only justification was the war emergency. With V-J day, August 14, 1945, there ended the last semblance of such justification.

October 7, 1947.   Petition for rehearing denied.

