[No. 30147. Department Two.   September 11, 1947.]

BERNARD REITER, *Appellant,* v. MON C. WALLGREN, *as Governor of the State of Washington, et al., Respondents.*[1]

[1]Reported in 184 P. (2d) 571.

*McMicken, Rupp & Schweppe* and *Mary Ellen Krug,* for appellant.

*The Attorney General* and *Stanbery Foster, Assistant,* for respondents Wallgren, Case, and Yelle.

*Oliver Malm* and *W. E. Heidinger,* for respondent Snoqualmie Falls Lumber Company.

HILL, J.—This action is brought by a citizen and taxpayer to restrain the state capitol committee, which includes the governor, the commissioner of public lands, and the state auditor, from consummating a sale of state capitol timber to the Snoqualmie Falls Lumber Company, a corporation, contrary to law, and to cancel and annul any and all proceedings had upon the application of the lumber company to purchase the timber involved in said sale.

The complaint alleges that the state capitol committee is about to sell the timber on a certain section of land to the lumber company for $367,778.59; that the sale is irregular and illegal for seven enumerated reasons; that the sale will irreparably damage the plaintiff and all other taxpayers of

and within the state of Washington. There is no allegation or contention that the plaintiff has any direct, special, or pecuniary interest in the subject matter of the action, or that he sustains any damage by the acts complained of, except as a taxpayer.

A demurrer was sustained to the complaint on the sole ground that the plaintiff had no legal capacity to sue, and the action was dismissed.

This appeal does not bring before us any question as to the sufficiency of the complaint, but only the issue as to whether the plaintiff had the capacity to sue. The question is: When, if ever, can a taxpayer who has no direct, special, or pecuniary interest in a transaction complained of, restrain or set aside the action of state officers or committees such as the state capitol committee if they are acting in excess of their authority or in violation of law, or if the acts complained of constitute malfeasance in office?

We should, in attempting to answer this question, endeavor to chart a course which will avoid the whirlpool of Charybdis involved in having the regularity and legality of every contract and every act of state officers and committees subject to challenge by any litigious spirit whose personal views are at variance with the action taken, and the rock of Scylla involved in the failure of public officers to protect the public interest.

These two dangers are well expressed by Judge Dunbar in writing the majority opinion, and by Judge Hoyt in writing the dissent, in *Jones v. Reed,* 3 Wash. 57, 27 Pac. 1067. The former said:

"As the fallacy of a proposition can best be shown by distorting it, we may presume that if one of the departments of the state government can be suspended at the instance of a private citizen, who has nothing more than a community interest in a matter which concerns the general public, that every department of the state can be suspended at the same time, and the whole machinery of the government stopped, and the very existence of the state, so far as the exercise of its functions are concerned, destroyed. Surely such a theory of practice is not in harmony with the genius of our government, nor will authority sanction, or public policy permit,

the adoption of a rule which will authorize any number of volunteers who may, rightfully or wrongfully, interpret the laws different from the interpretation put upon them by the officers of the state, to paralyze for a time every or any branch of the state government."

In the course of his vigorous dissent, Judge Hoyt expressed himself as follows:

"If the contention of the majority is true, the taxpayers of the state are absolutely powerless, and must sit quietly by and see the officers of the state do things which are clearly illegal, and which may result in incalculable losses to the state. The attorney general may be incompetent or corrupt, and may therefore refuse to institute proceedings to prevent actions however illegal, and the funds and property of the state be placed at the mercy of state officers, who, by corruption or incompetency, may produce or allow such a disposition of the property or funds of the state, during their term of office, and before they could be reached by the slow process of impeachment, as would practically ruin the state. To hold that such a thing is possible under our form of government, where the courts in all matters are made the final arbiters to decide as to the legality or illegality of almost every kind of action, simply because it is possible that such courts might improperly prevent certain proposed actions on the part of such officers, seems to me entirely untenable."

We find ourselves unable to agree *in toto* with either the position of the respondents or that of the appellant.

Respondents open their argument by stating:

"The judgment of dismissal of which appellant complains is based upon the proposition that a volunteer taxpayer has no capacity to maintain a suit to restrain state officials unless he can show a direct, substantial and pecuniary injury to himself separate and distinct from that suffered by the general public. This court, in an unbroken line of decisions from 1891 to 1938, or for a period of forty-seven years, has consistently enunciated and followed the rule above stated,"

and then cite ten cases, beginning with *Jones v. Reed, supra,* in support thereof. In other words, it is contended that we have charted a course which will avoid the whirlpool without regard to the danger from the rock. A careful reading of our cases will disclose that, while some language is broad

enough to indicate that only the attorney general can maintain an action such as this, there is, with the exception of *State ex rel. Hartley v. Clausen,* 146 Wash. 588, 264 Pac. 403, hereafter discussed, no reported case in which it appears that there was danger from the rock because the attorney general had refused to perform his duty.

Respondents' statement is much too broad. We never have held that, in a proper case *where the attorney general refused to act to protect the public interest,* a taxpayer could not do so. We have not had occasion to pass upon such a question, and we trust we never shall.

Appellant, however, says that we have that identical question now before us. At the top of p. 56 of his brief, he says:

"Where the Attorney General fails to act, and the governor is a party defendant, the right of action can only devolve upon the members of the body politic in their capacities as taxpayers."

And again, on p. 63, he concludes:

"The Governor of the State is a party defendant and the Attorney General is conducting the defense of the action. If the judgment of the lower court is affirmed the timber lands held in trust for the people will be disposed of illegally without redress."

The situation before the court is not as stated in these quotations from appellant's brief. We must find the appellant's capacity to maintain this action from the allegations of his complaint, not from the allegations or conclusions of the brief.

Appellant does not allege or contend that the irregularities and illegalities of which he complains ever were pointed out to the attorney general with a demand that he take action to prevent the consummation of the transaction complained of or to set it aside. There is no allegation in the complaint of a refusal to act by the attorney general. There are no facts alleged in the complaint from which it would appear that such a demand would have been useless.

In the absence of a statute governing suits by taxpayers, a demand upon the proper public officer to take

appropriate action is a condition precedent to the maintenance of a taxpayer's action challenging the validity and legality of what public officers are intending to do or have done, unless facts are alleged which sufficiently show that the demand to bring suit would have been useless.

In *Reed v. Cunningham,* 126 Iowa 302, 101 N. W. 1055, it is said:

"Public officers are always presumed, in the absence of any showing to the contrary, to be ready and willing to perform their duty; and until it is made to appear that they have refused to do so, or have neglected to act under circumstances rendering this equivalent to a refusal, there is no occasion for the intervention of the citizen for the protection of himself and others similarly situated. *Indeed, such refusal or neglect is the very basis on which equity will take jurisdiction; for otherwise the taxpayer whose interest is indirect would be utterly without remedy.* But for the right to invoke the aid of a court of equity officers might plunder the public treasury with entire immunity so long as they, or others for them, continue in control of the governing body." (Italics ours.)

Any other rule would open the door of the courts to any overofficious citizen who might, inspired by motives good or bad, institute actions challenging the validity of contracts or the acts of public officers without first presenting the question of the propriety of such procedure to the public officials who are charged with responsibility. Or, as was said in *Williams v. Stallard,* 185 Ky. 10, 213 S. W. 197:

"It would also result in lending encouragement to one who is not vested with duties or discretion in such matters to substitute his judgment and discretion for that of those to whom the law has confided them."

Appellant, in effect, urges that he comes within the generally recognized exception to the rule—that a demand need not be made if it would be clearly useless to request the proper public officer to take appropriate action—and that the fact that the attorney general is defending this action makes it apparent that a demand would have been useless. The obvious answer is that the attorney general is merely performing a duty imposed upon him by statute

(Rem. Supp. 1941, § 11034-3) and is demurring to a complaint which fails to show that the plaintiff has any capacity to maintain the action. It is equally obvious that appellant could not know what the attorney general would have done if the facts had been laid before him, and a proper demand made upon him at the time the complaint was prepared and the action commenced. It is as of that date, not the date of the appearance of the defendants, that appellant's capacity to sue must be determined. Neither personal interest nor previous failure to act raises a presumption that the attorney general will not act if a demand is made. As was said in *Hansen v. Carr*, 73 Cal. App. 511, 238 Pac. 1048:

"There is no intimation that the district attorney had refused to institute the action for the recovery of the alleged illegal expenditures and it is not sufficient to say that a demand upon him would have been unavailing because of interest which he may have had in the second and third alleged causes of action. We are not permitted to assume that because he did not commence a similar action he thereby neglected to perform a duty which the statute imposes upon him as the official legal officer of the county. On the other hand we are required to presume that he has performed his official duty until the plaintiff alleges facts to the contrary."

■ Another and conclusive answer to appellant's position is that, under our present statute and procedure, it may be incumbent upon the attorney general to both prosecute and defend an action.

Attention is directed to Rem. Supp. 1941, §§ 11034-3 and 11034-4 [P.P.C. §§ 944-19, -21], which reads as follows:

"§ 11034-3. In addition to the powers and duties now given the Attorney General of the State of Washington by law, he shall also have the power, and it shall be his duty, to represent the State of Washington and all officials, departments, boards, commissions and agencies of the State of Washington in the courts and before all administrative tribunals or bodies of any nature in all legal or quasi legal matters, hearings or proceedings, and to advise all officials, departments, boards, commissions or agencies of the State of Washington in all matters involving legal or quasi legal questions, except where it is otherwise provided by law to be the duty of the Prosecuting Attorney of any county; and it shall be the

duty of the Attorney General of the State of Washington, and he shall have the power, to employ or discharge sufficient attorneys and clerks to transact for the State of Washington, its departments, officials, boards, commissions and agencies, all business of a legal or quasi legal nature, except where it is provided by law to be the duty of the judge of any court, or the Prosecuting Attorney of any county, and the Attorney General shall fix the salary and compensation for all such attorneys and employees, and in the event such attorneys or employees are assigned to any department, board or commission, such department, board or commission shall pay the salary or compensation of such persons, as fixed by the Attorney General, not exceeding the funds made available to the department by law for legal services."

"§ 11034-4. No officer, official, director, administrative agency, board or commission of the State of Washington, other than the Attorney General, shall employ, appoint, or retain in employment any attorney for any administrative body, department, commission, agency, or tribunal or any other person to act as attorney in any legal or quasi legal capacity in the exercise of any of the powers or performance of any of the duties set forth in this act, except where it is provided by law to be the duty of the judge of any court or the Prosecuting Attorney of any county to employ or appoint such persons."

Inevitably, the attorney general, whatever may be his personal views, will be charged as a public officer with the responsibility of seeing that both sides of an issue are adequately presented to the court when there is a conflict between state officials or departments, or when there is a question as to whether a state officer, committee, or department is acting in an illegal manner, to the detriment of the public interest. This has been done in cases in which the attorney general had a pecuniary interest. *State ex rel. Troy v. Yelle*, 27 Wn. (2d) 99, 176 P. (2d) 459. (Respondent's attorneys in that case were special assistant attorneys general "employed, appointed, or retained" by the attorney general.) In *Malmo v. Case, ante* p. 828, 184 P. (2d) 40, the commissioner of public lands, represented by a special assistant attorney general "employed, appointed, or retained" by the attorney general, successfully attacked extensions of timber contracts for which the attorney general had voted

and which he had approved, as a member of the board of state land commissioners. In a case now set for hearing before the court, State ex rel. Hamblen v. Yelle, No. 30371, the attorney general will appear on behalf of respondent Yelle, and special assistant attorneys general "employed, appointed, or retained" by the attorney general will appear on behalf of relator Hamblen.

It has always been a paramount duty of the attorney general to protect the interests of the people of the state. Judge Mackintosh, speaking for the court in *State ex rel. Dunbar v. State Board,* 140 Wash. 433, 249 Pac. 996, said:

"Contention is made that the *Attorney General* is compelled, under the constitution and statutes, to represent state officers, and that therefore he can not begin an action wherein state officers are defendants. Attention is called to Rem. Comp. Stat., § 112, subd. 3, where it is made the duty of the *Attorney General* to defend all actions against any state officer. The legitimate conclusion of such an argument is that the *Attorney General* must, if such a situation arise, sit supinely by and allow state officers to violate their duties and be recreant to their trusts, and that instead of preventing such actions it is his duty to defend the delinquents. The law can not be given any such construction. His paramount duty is made the protection of the interest of the people of the state and, where he is cognizant of violations of the constitution or the statutes by a state officer, his duty is to obstruct and not to assist; and where the interests of the public are antagonistic to those of state officers, or where state officers may conflict among themselves, it is impossible and improper for the *Attorney General* to defend such state officers."

Under the statute quoted above, as currently interpreted by the attorney general, it is both possible and proper for the attorney general to defend such state officers, but it still remains his paramount duty to protect the interests of the people of the state. Even when the governor brings such an action, as he may, he should first demand that the attorney general commence the action.

In *State ex rel. Hartley v. Clausen, supra,* we held that the governor had the capacity to maintain an action to enjoin the state auditor and the state treasurer, as members of the

state highway committee, from employing a certain individual as a secretary and consulting engineer for the committee. (This will explain the references to the governor in the two quotations from appellant's brief.) We there, as here, were passing solely on the question of the capacity of the plaintiff to maintain the action. After calling attention to the fact that our constitution makes the governor the highest executive authority (Art. III, § 2) and charges him with the responsibility of seeing that the laws are faithfully executed (Art. III, § 5), we said:

"Under our form of government, it is the right and duty of the judicial department to interpret the law and declare its true meaning and intent. Equally, it is the right and duty of the executive department to see that the laws as thus interpreted are properly enforced. As the final right to determine the true intent and purpose of all laws is lodged in the supreme court of this state, so is the final determination as to their enforcement and execution lodged in the governor. *The complaint in this action alleges that a request was made by the governor of the Attorney General that an action be commenced to determine the legality of the action of the Board, and of the expenditures of money, and this we hold to be the orderly method of procedure.* But it would be an anomalous situation if the governor, having the supreme executive power of the state, was unable to secure such a determination because of the failure or refusal to act on the part of one having less power. Some of the expressions referred to, in our cases above cited, are broad enough to indicate that the *Attorney General* only may maintain an action such as this, and as applied to the facts in the particular cases, the statements therein contained are correct. But it must be remembered that, in none of those cases, was the governor a party, nor were we in any of them called upon to construe the above quoted provisions of our constitution [Art. III, §§ 1, 2, and 5] concerning the powers, rights and duties of the governor." (Italics ours.)

We believe that we avoid both the whirlpool and the rock referred to in the early part of this opinion, when we make it a condition precedent to the maintenance of an action such as this, by a taxpayer, that the plaintiff show either due demand upon the attorney general to bring the action and his refusal, or that a situation exists which makes

such a demand useless. The appellant has done neither in his complaint, and the trial court properly held that the plaintiff had no legal capacity to sue.

Lest there be misunderstanding as to what we here hold, attention is called to the fact that this case does not involve an improper use or misappropriation of public funds. There are many who believe that, under the cases following *Jones v. Reed, supra,* and *State ex rel. Pierce County v. Superior Court,* 86 Wash. 685, 151 Pac. 108, the attorney general is the only party who under the law can maintain an action to prevent public funds from being improperly used, and that, if the attorney general refuses to act, the only available remedy which a taxpayer has is not a suit in equity, such as this one, but a mandamus action to compel the attorney general to perform his duty. The latter was the procedure followed in State ex rel. Zednick v. Troy, No. 30109, but the propriety of the procedure was not presented to the court, as the case became moot by reason of the decision in *State ex rel. Troy v. Yelle, supra.* What may be the proper method of procedure in the case of improper use of public funds if the attorney general refuses to act, is not here presented, and our decision does not relate thereto.

The judgment of dismissal is affirmed.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.

---

October 25, 1947. Petition for rehearing denied.