(Nos. 56150, 56152 cons.—

THE CITY OF CHICAGO *ex rel.* DEMETRI KONSTAN-TELOS *et al.*, Appellees, v. DUNCAN TRAFFIC EQUIPMENT COMPANY *et al.*, Appellants.—THE CITY OF CHICAGO, Appellee, v. DUNCAN TRAF-FIC EQUIPMENT COMPANY *et al.*, Appellants.

*Opinion filed March 25, 1983.*

Sidney J. Hess, Jr., Roger L. Price, and Gary E. Mitchell, of Aaron, Schimberg, Hess, Rusnak, Deutsch & Gilbert, of Chicago, for appellants Duncan Traffic Equipment Company, Jerome J. Robinson, and T. A. Mieczynski.

James N. Karahalios, of Chicago, for appellant John Geocaris.

George C. Pontikes, of Foss, Schuman & Drake, of Chicago, for appellee Demetri Konstantelos.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Demetri Konstantelos (hereafter plaintiff) appealed from the order of the circuit court of Cook County dismissing his action filed as a taxpayer pursuant to section 1—5—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 1—5—1) in the name and for the benefit of the city of Chicago against Duncan Traffic Equipment Company (hereafter Duncan). He also appealed

from the order dismissing with prejudice, pursuant to a stipulation between the parties to the suit, the action brought by the city of Chicago against defendant Duncan. The appellate court reversed and remanded (102 Ill. App. 3d 304), and we allowed the petition for leave to appeal of Duncan and two of its corporate officers, and that of John Geocaris, deputy commissioner of the Department of Streets and Sanitation of the city of Chicago.

On April 12, 1979, plaintiff filed this action against Duncan Parking Meter Maintenance Company, Inc. (hereafter Duncan Parking), Jerome Robinson and Ted Mieczynski, as president and vice-president of Duncan Parking, respectively, John Geocaris, deputy commissioner of streets and sanitation, and the treasurer of the city of Chicago in his official capacity. The complaint alleged that defendant, Duncan Parking, had a contract to inspect the city's parking meters and that it submitted invoices to the city totaling $270,681 for inspections during the months of January and February 1979 which were not in fact performed. The complaint alleged that "near blizzard conditions" prevented inspection of parking meters, that Geocaris, Robinson and Mieczynski were aware that this work was not performed, and that a conspiracy existed among these defendants "whereby Geocaris is to pay all bills submitted by Duncan whether or not Duncan in fact performs services for the city of Chicago."

On April 23, 1979, Duncan Parking answered the complaint, stating that it had no contract with the city of Chicago to inspect parking meters, and moved to dismiss the complaint. On April 26, 1979, an order was entered giving plaintiff until May 17 to respond to Duncan Parking's motion to dismiss.

After extensive correspondence and discussion with the office of the corporation counsel, plaintiff, joined by

intervenor, Clifford Kelley, a Chicago alderman, on June 12, 1979, filed an amended complaint. Defendant, Duncan, was joined as a party defendant, and it was alleged in the amended complaint that defendant Robinson, president of Duncan, was also the president of Duncan Parking, which contributed financially to Geocaris' ward organization; that Duncan's vice-president, Mieczynski, was a financial contributor to Geocaris' ward organization; that there was a contract between defendant and the city; that invoices for meter inspections for January and February 1979 were submitted to the city although no inspections took place; that all of the defendants except the city treasurer knew that the work was not performed and could not have been performed and that the sworn invoices submitted to the city were false and contained material misrepresentations of fact; that defendant Geocaris gave his approval of these payments despite his knowledge that the sworn invoices were fraudulent, or, in the alternative, Geocaris approved the invoices with reckless disregard as to whether any work was actually performed. The amended complaint prayed, *inter alia*, for an accounting and for actual and punitive damages against Robinson, Mieczynski and Geocaris.

On May 30, 1979, the city of Chicago filed an action against defendant Duncan alleging that the city had paid Duncan for services which were not performed and seeking judgment "for any and all sums found to have been paid for work reported and billed for by Defendants * * * but never actually performed." It was alleged in the complaint that "[r]ecords furnished to the City of Chicago by the First National Bank of Chicago indicate that at least 636 meters located in the metered facilities maintained by the city were not collected during the months of January and February, 1979, despite the fact that meters are to be collected at least once each month"; that the repair and maintenance reports for

those same meters indicated that full service was rendered to those meters by Duncan; that comparison of collection reports with Duncan's maintenance reports would indicate that at least 636 meters were not properly serviced by Duncan; that discovery of Duncan's books and records was necessary to determine the accuracy of Duncan's invoices.

On the same date on which his amended complaint was filed, plaintiff filed a motion to consolidate his case with that of the city and to disqualify the office of the corporation counsel from representing the city in this litigation. He also moved that the court appoint plaintiff's counsel to represent the city in the consolidated cases. The circuit court consolidated the causes "for trial" and ordered that the parties brief the motion concerning disqualification of corporate counsel.

In the motion to disqualify the office of the corporation counsel it was stated that subsequent to the filing of the motion to dismiss the original complaint, plaintiff's counsel sought to obtain from the city of Chicago's corporation counsel's office the name of the corporation, and a copy of the contract providing for the inspection of parking meters in the city of Chicago. On April 26, 1979, plaintiff's attorney spoke with James Daley, assistant corporation counsel, and asked Daley whether the corporation counsel's office, without the necessity of a subpoena, would divulge the name of the corporation which inspected the city's parking meters. Mr. Daley responded that he would call plaintiff's attorney within a few days. Two subsequent telephone calls elicited essentially the same response, and in a third telephone conversation Mr. Daley suggested that "it would be better" for plaintiff's attorney to contact Mr. James Arnold, purchasing agent of the city of Chicago. A letter was delivered by messenger to Arnold on May 2, 1979, requesting a copy of the contract and asking that the copy be for-

warded by May 7. A copy of the contract was not received by the date requested, so plaintiff's attorney called Mr. Daley, who replied that he would call back promptly concerning the matter. Plaintiff's attorney received no response from Mr. Daley, so on May 10, 1979, a subpoena for deposition was served on Mr. Arnold. On May 14, 1979, a contract was delivered to plaintiff's attorney's office accompanied by a letter from M. Ellen Sutton, assistant corporation counsel, but the document proved to be the wrong contract. On May 17, 1979, James Daley supplied plaintiff's attorney with the name of the proper corporation. Plaintiff then filed a motion to dismiss Duncan Parking as a defendant and for leave to file an amended complaint naming the proper corporate defendant.

That same day, plaintiff's attorney again requested assistant corporation counsel to furnish him a copy of the contract between the city and Duncan. The assistant corporation counsel told plaintiff's counsel that a copy would be sent to him. Again, no contract was sent to plaintiff's counsel. Duncan then moved to dismiss the amended complaint on the basis, *inter alia*, that the amended complaint was barred by the pendency of a prior suit filed by the city of Chicago in the same cause; that the plaintiffs lacked standing because they did not demand that the city of Chicago file an action against defendants, and because the complaint failed to state a proper statutory taxpayers' action since there was no allegation that any of the expenditures made by the city were without legal authority.

The city filed a request for production of documents seeking detailed information regarding reports and records concerning the inspection and repair of meters during the months of January and February of 1979. Plaintiff filed a request for production of documents, objects and tangible things seeking to discover a wide vari-

ety of information including the shareholders, corporate officers and corporate directors of Duncan, their political affiliations and recent contributions to political parties, and all invoices, vouchers, and requests for payment submitted from the date the contract was entered into by defendant Duncan. Duncan objected to plaintiff's discovery request. Apparently no response was ever made to the city's request for production of documents.

On September 27, 1979, the circuit court allowed Duncan's motion to dismiss the amended complaint because it alleged no demand that the city bring the action and ruled that plaintiff's motion to disqualify the corporation counsel was thus rendered moot. On October 19, 1979, the city and Duncan entered into a stipulation and settlement agreement providing for payment by Duncan to the city of the sum of $5,000. That same day the circuit court dismissed the city's cause with prejudice subject to and conditioned upon the terms of the stipulation and settlement agreement. Only plaintiff Konstantelos appealed from the order.

Defendants contend that the appellate court erred in holding that plaintiff had standing to bring this action. They argue that plaintiff had no standing to sue in the name and for the benefit of the city of Chicago because plaintiff's complaint alleges neither that he made a demand on the appropriate officials to sue nor sufficient facts to show that such a demand would have been futile.

Plaintiff contends that while common law taxpayer actions require a prior demand that the proper public official bring suit before a taxpayer may maintain such an action, no such requirement may be read into section 1—5—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 1—5—1). He notes that "It is the general rule that in the absence of a controlling statute, a demand upon the proper public officers to bring suit in the

name of the taxing unit is a condition precedent to the maintenance of a taxpayer's action." (74 Am. Jur.. 2d *Taxpayers' Actions* sec. 31 (1974); see also *Reiter v. Wallgren* (1947), 28 Wash. 2d 872, 876-77, 184 P.2d 571, 573; *Munoz v. Commissioner of Public Lands* (1955), 40 Hawaii 675, 690.) Section 1—5—1 provides:

"A suit may be brought by any taxpayer, in the name and for the benefit of the municipality, against any person to recover any money or property belonging to the municipality, or for any money which may have been paid, expended, or released without authority of law. But such a taxpayer shall file a bond for all costs, and shall be liable for all costs in case the municipality is defeated in the suit, and judgment shall be rendered accordingly." (Ill. Rev. Stat. 1979, ch. 24, par. 1—5—1.)

Plaintiff argues that since no requirement for a prior demand is contained in the statute, no such requirement exists.

In *Metropolitan Sanitary District ex rel. O'Keeffe v. Ingram Corp.* (1981), 85 Ill. 2d 458, 468-69, this court held that a prior demand to sue or a showing that such a demand would have been futile was a precondition to a taxpayers' action. The taxpayers' action in that case was brought under section 11.22 of the "Purchasing Act for the Metropolitan Sanitary District of Greater Chicago" (Ill. Rev. Stat. 1971, ch. 42, par. 331.22), which makes no mention of the prior-demand requirement. Thus, the lack of an explicit requirement of a prior demand in a statute providing standing for a taxpayer to bring suit in the name and for the benefit of a government entity does not negate that requirement.

The reasons for requiring that a demand be made upon the proper public officials prior to bringing a common law taxpayers' action apply equally to the bringing of a taxpayers' action authorized by statute. The enactment of a statute providing standing for a taxpayer to sue does not negate the presumption that public officers, in the absence of

any showing to the contrary, are ready and willing to perform their duties. If the demand requirement did not exist for statutory taxpayer suits, overofficious citizens could frustrate the orderly administration of governmental responsibilities, and such citizens would be encouraged to substitute their discretion for that of those to whom the law has confided that discretion. See 74 Am. Jur. 2d *Taxpayers' Actions* sec. 31 (1974); see also *Williams v. Stallard* (1919), 185 Ky. 10, 13-14, 213 S.W. 197, 199; *Reiter v. Wallgren* (1947), 28 Wash. 2d 872, 877, 184 P.2d 571, 573-74; *Farler v. Perry County Board of Education* (Ky. App. 1961), 355 S.W.2d 659, 662; *Reed v. Cunningham* (1905), 126 Iowa 302, 303, 101 N.W. 1055, 1056; *Merrimon v. Southern Paving & Construction Co.* (1906), 142 N.C. 539, 548-49, 55 S.E. 366, 369; *Dunn v. Long Beach Land & Water Co.* (1896), 114 Cal. 605, 609-10, 46 P. 607, 608.

The appellate court noted that plaintiff had not made a demand as required by our decision in *O'Keeffe*. The appellate court, however, found that the principles of *O'Keeffe* were applicable to this case and that numerous instances in the record demonstrated that there was reason to believe that the city of Chicago's corporation counsel was not adequately representing the public interest. The appellate court concluded:

> "On the basis of the whole record as demonstrated by the facts previously stated, there were grounds to believe that the city was inadequately protecting the public interest in the matter. Therefore, the Taxpayer should have remained in the case, and his suit should not have been dismissed even though the Taxpayer, like the taxpayer in *O'Keeffe,* had not made a demand to sue defendants prior to filing suit as a taxpayer." (102 Ill. App. 3d 304, 315.)

Defendants argue that *O'Keeffe* is not authority for the proposition that events occurring subsequent to the filing of a taxpayer's action may be considered in determining whether it would have been futile to make a demand on appropriate officials to sue. Defendants further contend

that, in any event, plaintiff's complaint contains no allegations concerning the futility of making a demand on the appropriate officials, and thus the circuit court's dismissal of that complaint was proper.

We agree with defendants that a taxpayer must allege in his complaints facts to show either that a demand had been made and the proper authorities refused to act or which would show that such a demand would have been futile. (*People ex rel. Lee v. Kenroy, Inc.* (1977), 54 Ill. App. 3d 688, 692; *Williams v. Stallard* (1919), 185 Ky. 10, 12-16, 213 S.W. 197, 198-200; *Reiter v. Wallgren* (1947), 28 Wash. 2d 872, 876-77, 184 P.2d 571, 573; *Muirhead v. Johnson* (1951), 232 Minn. 408, 410-11, 46 N.W.2d 502, 505.) We do not agree, however, with Duncan's assertions that a taxpayer cannot rely upon events occurring subsequent to the filing of his suit to demonstrate that a demand would be futile and subsequently file an amended complaint. Indeed, this contention was rejected in *O'Keeffe*, where the taxpayer amended his complaint to set forth reasons why he could maintain his action despite his failure to demand that the district sue the defendant (85 Ill. 2d 458, 466) and this court relied upon events occurring subsequent to the filing of the initial complaint to sustain the circuit court's finding that O'Keeffe had standing to bring his taxpayer's suit (85 Ill. 2d 458, 468-70). The procedural mistake of failing to make a demand on the proper authorities does not forever preclude a taxpayer from reinstituting his cause of action in the name and on behalf of a governmental entity after his case has been dismissed on the basis that he had failed to make a demand before the filing of the initial complaint. (*State ex rel. Braly v. Ford* (1941), 189 Okla. 299, 303, 116 P.2d 988, 992.) We perceive of no valid reason why a taxpayer cannot rely upon events occurring subsequent to the initial filing of his complaint to demonstrate that a demand on the proper authorities would have been futile and that those authorities are inade-

quately protecting the public interest.

The circuit court erred in dismissing the plaintiff's cause with prejudice and thus precluding him from filing an amended complaint alleging facts sufficient to establish his standing to bring suit on behalf and in the name of the city of Chicago. It has been repeatedly held that a cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle plaintiffs to recover. *Fechtner v. Lake County Savings & Loan Association* (1977), 66 Ill. 2d 128; *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298; *Winnett v. Winnett* (1974), 57 Ill. 2d 7; *Miller v. DeWitt* (1967), 37 Ill. 2d 273.

Although we agree with the appellate court that the circuit court erred in dismissing plaintiff's action on the standing issue, we do not agree that on this record there is no question concerning plaintiff's standing to bring the action. The "facts" shown concerning the effort to obtain the name of the proper defendant and a copy of the contract appear only in the unverified motion to disqualify the corporation counsel from representing the city in this cause. There were no supporting affidavits and no testimony was taken. Admittedly, there was no demand, and the question whether such demand would have proved futile is to be determined by the circuit court upon appropriate pleadings and testimony. On remand, plaintiff will be granted leave to amend his complaint to make allegations concerning the futility of a demand, and that issue may be determined by the circuit court in further proceedings not inconsistent with this opinion.

Defendants contend that the amended complaint did not state a cause of action since it failed to allege that the payments to Duncan were made "without authority of law." Defendants argue that section 1—5—1 of the Illinois Municipal Code permits a taxpayer's suit only when the municipality has relinquished funds without authority of law

and since the monies in this case were paid over pursuant to a validly executed contract, these payments were not released "without authority of law" within the meaning of the statute. Duncan argues that the appellate court has misread plaintiff's complaint and has created a rule whereby taxpayers can bring suit to question the adequacy of performance under a contract, a discretionary duty which should be solely in the hands of properly elected or appointed public officials. Defendants complain that the appellate court cited no precedent to support its holding, and that indeed there is none. Duncan suggests that if the General Assembly had intended to allow taxpayers' actions to enjoin fraud, it would have specifically provided for such standing, as does the comparable statute in New York. See N.Y. Gen. Mun. Law sec. 51 (1981).

We do not agree with defendants that the appellate court misread the allegation in plaintiff's complaint. Plaintiff alleged that Duncan submitted to the city, and Geocaris approved, vouchers for work which both defendants knew was never performed. In the alternative, plaintiff alleged that the payments were approved with reckless disregard as to whether the work had been performed. In our opinion the allegations do not attack the adequacy of performance under the contract. Plaintiff's allegation that these defendants schemed to defraud the city of considerable funds or alternatively that defendant Geocaris turned a blind eye to vouchers submitted by one of his supporters hardly amounts to an attack on the adequacy of performance under a validly executed contract. If plaintiff can establish that fraud exists, "the fraudulent act is considered tantamount to a waste of public funds" and a taxpayer has standing to prevent the fraudulent activity. (*Munoz v. Commissioner of Public Lands* (1955), 40 Hawaii 675, 682.) We cannot perceive how it can be seriously contended that section 1—5—1 of the Illinois Municipal Code does not permit a taxpayer to bring suit to recover money of which the city

was defrauded merely because the fraud was committed under cover of a validly executed contract.

Defendant Duncan contends that the appellate court erred in reversing the dismissal of the city's suit. Defendant argues that the city's case was moot since it had been settled and dismissed with prejudice. It also argues that plaintiff lacked standing to appeal from a settlement order to which he was not a party. Defendant argues, too, that under *Shannon v. Stookey* (1978), 59 Ill. App. 3d 573, the plaintiff's action was not completely merged with the city's action and thus plaintiff was not a party to the city's action. Finally, defendant Duncan argues that our opinion in *O'Keeffe* cannot be read to give plaintiff standing to appeal the dismissal of the city's suit and that public policy does not dictate reversal of the settlement.

We do not agree that the city's case against Duncan was moot. We have here held that plaintiff must be given the opportunity to establish standing and if he had standing to bring his action, the settlement and dismissal should not have been effected without his being given an opportunity to object.

We need not and do not consider the effect of the consolidation order or Duncan's arguments based on *Shannon v. Stookey*. We must reject the contention that plaintiff could not appeal a settlement order to which he was not a party since clearly this question was decided in *O'Keeffe*. We do not agree with Duncan that the appellate court misread *O'Keeffe*. Duncan suggests that this court's decision in *O'Keeffe* gave Hartunian appellate standing only because there was an inherent conflict of interest involved in that case since O'Keeffe's attorney was interested in being awarded the largest amount of attorney fees possible despite what would be beneficial to the public. *O'Keeffe* clearly should not be limited to such a narrow holding. In concluding that Hartunian had derivative appellate standing to appeal the award of attorney fees, this court stated

that the cases cited by Ingram and O'Keeffe were inapposite "because the record fully establishes here that neither the MSD nor O'Keeffe was adequately taking into account the interests of the taxpayers on the attorney fees issue." (85 Ill. 2d 458, 477.) Here, too, it was alleged that the city and Duncan had not adequately taken into account the interests of the taxpayers.

The final issue argued by defendant Duncan is whether the settlement between the city and Duncan was contrary to public policy and thus unenforceable. Duncan argues that the appellate court erred in presuming that the settlement was inadequate merely because the settlement sum was a small percentage of the amount originally claimed by plaintiff, and that the appellate court's opinion violates long-standing public policy in favor of settlements of disputes.

We agree that it is improper to declare a settlement contrary to public policy merely on the ground that it is a small percentage of what was originally claimed. As Duncan perceptively points out, suits are often settled for much less than the amounts originally claimed, and in any event a public official's discretion in deciding the appropriate amount for which to settle the dispute should ordinarily not be disturbed. However, the appellate court did not find that the settlement violated public policy merely because it was such a small amount, but rather considered the amount of the settlement as one factor of several in the record which demonstrated that the public's interest was not adequately represented.

A great deal has been said in the parties' briefs and in oral argument concerning whether there is any merit to plaintiff's claim that Duncan did not perform a substantial amount of work under its contract or whether Geocaris was aware of this failure to perform. The merits of plaintiff's case is a question to be decided in the circuit court under proper procedures. The sole question presented in

this appeal is whether plaintiff had standing to present the factual issues raised by his complaint and have these issues decided by the circuit court.

The appellate court's reversal of the circuit court's dismissal of plaintiff's complaint is affirmed, and the cause is remanded to the circuit court with directions to grant plaintiff leave to file an amended complaint. The appellate court's reversal of the order of dismissal of the city's suit pursuant to the settlement agreement is affirmed.

*Affirmed and remanded, with directions.*

WARD and SIMON, JJ., took no part in the consideration or decision of this case.